MATAGORDA COUNTY APPRAISAL DISTRICT, Petitioner,

v.

COASTAL LIQUIDS PARTNERS, L.P., Respondent.

No. 03–1200.

Supreme Court of Texas.

Argued Dec. 1, 2004.

Decided May 27, 2005.

Peter William Low, Austin, TX, for petitioner.

James A. Porter, El Paso Corporation, Houston, TX, William Ikard, Mark Stephen Hutcheson, Laurie E. Ratliff, Teresa Ann Dahmus, Popp & Ikard LLP, Austin TX, for respondent.

Robert Mott, Joseph T. Longoria, Perdue Brando Fielder Collins & Mott, Jeffrey J. Horner, Bracewell & Pattterson, L.L.P., Houston, TX, for amicus curiae.

Justice BRISTER delivered the opinion of the Court.

We must decide whether salt dome caverns created to store liquid hydrocarbons may be appraised and taxed separately from the surface land above them. The question has been here before, but we did not reach it in *Coastal Liquids Transportation, L.P. v. Harris County Appraisal District* because the taxpayer lacked capacity.[1] Predictably, given the millions of tax dollars involved,[2] the question has surfaced again.

In this case, the taxpayer Coastal Liquids Partners, L.P. challenged the Mata-

---

1. *See* 46 S.W.3d 880, 885–86 (Tex.2001).

2. Testimony at trial indicated that Texas has more than 500 of such facilities.

gorda County Appraisal District's valuation of the Hiltpold #1 and Hudson #3 caverns at almost $2 million in value for the tax years 1996 through 1999. The trial court granted judgment for the District, but the court of appeals reversed, finding the caverns could not be appraised separately from the surface above them. We reverse, and remand to the court of appeals.

## I

We first must address the District's jurisdictional challenge.

■ Since 1995, a person leasing property who is contractually obligated to reimburse the owner for ad valorem taxes can protest an appraisal in the owner's place.[3] It is undisputed that Coastal's lease of these caverns from Texas Brine Corporation contains just such an obligation.

But the statute allows only one protest; the owner and the lessor cannot both do so.[4] The District argues that the courts have no jurisdiction of Coastal's claims because Texas Brine filed a protest concerning fourteen salt dome facilities, including the two it leased to Coastal. Texas Brine signed agreements with the District settling its protest.

■ First, we disagree that this is a jurisdictional question. It is true a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes.[5] But there is no question there was such a proceeding here; the only question is whether there was *more* than one.

■ In the first instance, it is up to a local appraisal board to decide whether there has been more than one protest relating to the same property.[6] While a board has no authority to change a settlement reached by a taxpayer and the chief appraiser,[7] it certainly has the authority to take note of what property was included. By entering an order assessing the appraised value of the two caverns here in Coastal's proceeding, the board impliedly

3. Tex. Tax Code § 41.413(b); *see also id.* § 42.015(a) ("A person leasing property who is contractually obligated to reimburse the property owner for taxes imposed on the property is entitled to appeal an order of the appraisal review board ....").

4. Id. § 41.413(b).

5. Tex. Tax Code § 42.09 (providing that tax protest procedures are exclusive means of asserting tax claims except defenses of nonownership or that property is in a different jurisdiction); *Robstown Indep. Sch. Dist. v. Anderson*, 706 S.W.2d 952, 953 (Tex.1986) (per curiam) (holding that failure to file protest to assessments after Tax Code's January 1, 1982 effective date waives complaint). While we held twenty years ago that compliance with the statutory requirements for appeal from an appraisal review is jurisdictional, *Appraisal Review Bd. v. Int'l Church of Foursquare Gospel*, 719 S.W.2d 160, 160 (Tex. 1986) (per curiam), we have yet to address

whether that holding survives *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000) (holding that compliance with statutory requirements for asserting wrongful death claim was case-determinative but not jurisdictional question).

6. Tex. Tax Code § 41.45(a) ("If more than one protest is filed relating to the same property, the appraisal review board shall schedule a single hearing on all timely filed protests relating to the property."); *see also id.* § 41.01(a)(6) (providing that appraisal review board shall "make any other determination that this title specifically authorizes or requires").

7. *Id.* § 41.01(b) (providing that board may not review or reject agreements between property owners and chief appraiser pending an appeal to the board).

rejected the District's claim.[8]

■ Appeal of an appraisal board ruling is by trial de novo.[9] When Coastal appealed the board's appraisal to the trial court, the District filed a plea to the jurisdiction. In response, Coastal introduced a tape transcript from the board hearing and testimony from some of the participants. While the transcript is imperfect due to the informal nature mandated for such hearings,[10] it supports Coastal's argument that Texas Brine orally limited its own protest and subsequent settlement to those for which it had to pay the taxes. A letter from Coastal's counsel to Texas Brine also supports this conclusion.

Treating the District's jurisdictional challenge as one attacking the legal sufficiency of the evidence to support the trial court's judgment,[11] we hold that the District failed to prove as a matter of law that there were duplicate protests concerning the same property.

## II

According to the transcript of the appraisal board hearing, Coastal initially took the position that storage caverns like those here are not subject to ad valorem taxes at all. In this appeal, it takes the more moderate position that the caverns may be taxed, but only as "land" and as a part of the surface realty to which they are attached. Otherwise, Coastal argues, the District can improperly tax aspects of property that are inseparable, and perhaps double tax them. We address each argument separately.

## A

The Property Tax Code defines "real property" as: (A) land; (B) an improvement; (C) a mine or quarry; (D) a mineral in place; (E) standing timber; or (F) an estate or interest in one of the above.[12] In preparing its records, the Code requires appraisal districts to list separately (among other things) the appraised value of land, improvements, and separately taxable estates or interests.[13] Obviously, a single tract may include several of these aspects of realty, or perhaps even all.

■ It has long been the case that at least some of these aspects of real property can be taxed separately even though all are part of the same surface tract. Thus, for example, in 1923 we held that an oil and gas lease was not personalty but an interest in realty that was separately taxable from the surface estate.[14] This rule does not depend on whether each aspect is separately owned, as identical properties cannot be taxed differently depending on whether, for example, a mineral interest has been legally severed.[15]

---

**8.** *Id.* § 41.47(a) ("The appraisal review board hearing a protest shall determine the protest and make its decision by written order.").

**9.** *Id.* § 42.23(a) ("Review is by trial de novo. The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally.").

**10.** The Property Tax Code provides that "[h]earing procedures to the greatest extent practicable shall be informal." *Id.* § 41.66(b). While witnesses must be sworn, *id.* § 41.67(a), they may appear by affidavit. *Id.* § 41.45(b).

**11.** *See Dubai,* 12 S.W.3d at 76.

**12.** Tex. Tax Code § 1.04(2).

**13.** *Id.* § 25.02(a).

**14.** *Stephens County v. Mid–Kansas Oil & Gas Co.,* 113 Tex. 160, 254 S.W. 290, 292, 294–95 (1923).

**15.** *State v. Federal Land Bank of Houston,* 160 Tex. 282, 329 S.W.2d 847, 849 (1959).

But in *Gifford–Hill & Co. v. Wise County Appraisal District*, we held that in some circumstances subsurface limestone cannot be appraised separately from the land immediately above it.[16] Coastal urges us to make a similar ruling here. We agree that *Gifford–Hill* is dispositive, but not in the way Coastal suggests.

The Court's concern in *Gifford–Hill* was that a blanket rule taxing limestone separately "would subject thousands of unsuspecting farmers and ranchers to increased tax liability and frustrate the Constitution's intent '[t]o promote the preservation of open space land ... devoted to farm or ranch purposes.' "[17] But we did not hold that subterranean resources could *never* be appraised separately from the surface; to the contrary, we remanded for the trial court to determine which part of the limestone in that case *could* be separately appraised.[18]

Instead, *Gifford–Hill* recognized a distinction between limestone currently under production as part of a quarry, and lands containing limestone where extraction was merely a future possibility:

> We agree that the term "quarry" means more than merely the excavation existing during the extraction of a source of supply or left after a source of supply has been extracted. However, the opening of a quarry on a tract of land does not automatically subject the entire tract to ad valorem taxation as a quarry. We recognize that a deposit of limestone may extend beyond the area from which limestone is presently being produced. Some adjacent land may be in the path

of the quarry and its limestone deposit may reasonably be deemed to be producing and thus considered as part of the quarry. Also, if any phase of the operation of the quarry is conducted on surface land, such land may constitute part of the producing quarry. However, other land surrounding a quarry may not be included as part of the existing quarry even though the land's value increases because the extent of the limestone is known with some certainty. The value of the land containing nonproducing limestone should be determined by applying a per acre value to the number of acres covered by the interest rather than by an intrinsic price based upon the market price of the limestone per ton.[19]

We remanded for the trial court to value separately the limestone that was part of a producing quarry (appraised at $6,000 per acre) and the limestone that was not (taxed at the open-space value of $57 per acre).[20]

 The reasoning in that case requires a different result under the facts in this one. The storage caverns here were not awaiting future development; they were and had been in active commercial use, separate and apart from whatever uses were taking place on the surface above. Evidence at trial indicated Coastal pays almost $500,000 annually to rent and use the caverns, and contractually agreed to pay any ad valorem taxes associated with them. Assessing these caverns separately from the surface does not burden any unsuspecting farmers or ranchers with tax

---

**16.** 827 S.W.2d 811, 814, 817 (Tex.1991).

**17.** 827 S.W.2d at 817 n. 8, 822–23.

**18.** *Id.* at 817.

**19.** *Id.* at 815–16 (citations omitted). *See also* Tex. Tax Code § 23.17 ("An interest in a

mineral that may be removed by surface mining or quarrying from a deposit and that is not being produced is appraised at the price for which the interest would sell while the mineral is in place and not being produced.").

**20.** 827 S.W.2d at 825.

liability for an asset unlikely to be exploited.

Coastal argues that separately assessing the storage caverns here could lead to separate assessment of a house and its scenic view or access to a beach. We agree that many aspects of property cannot be separately assessed from the value of the surface land, and that when the latter reflects the former a separate assessment would tax them twice.

But it is difficult to state a precise rule about what property can be separately assessed because of the multitude of possible circumstances and the hundreds of Tax Code provisions that may govern them. Perhaps the most that can be said is that each property should be appraised "based upon the individual characteristics that affect the property's market value."[21] While the constitution requires that "[t]axation shall be equal and uniform,"[22] that mandate may render different appraisal methods appropriate in different circumstances. Because the circumstances here differ from those in *Gifford–Hill*, we apply the same reasoning but reach a different result.

**B**

■ Coastal also argues that the District's listing of the storage caverns as "Improvements" for 1999 and as "Other" for previous tax years must be presumed to be double taxation. The argument appears to be that (1) the Property Tax Code requires property to be appraised in one of six mutually exclusive categories, (2) the only category applicable to these storage caverns is "land," and thus (3) the additional categories used here must be double taxation as the caverns were already included in the "land" assessment. Though the trial court sitting as trier-of-fact found no evidence of any multiple or overlapping appraisal, Coastal insists that the statutory requirements mean that "no evidence of overlap is necessary."

■ We disagree with each of these propositions. First, the Property Tax Code does not expressly require real property to be listed in the six categories used to define it. To the contrary, the Code explicitly requires separate records of the appraised value of land, improvements, and separate interests, but not of mines, minerals, or timber.[23]

Further, some of the categories used to define real property clearly overlap.[24] And in some cases, it is difficult to draw the line between these categories, as we struggled to do between "mineral in place" and "quarry" in *Gifford–Hill*.[25]

It is true that in the latter opinion we referred somewhat skeptically to the appraisal district's use of "a new category of taxable property, previously unknown in the law, entitled 'rock reserve.'"[26] But we certainly did not conclude that such

---

21. *See* Tex. Tax Code § 23.01 ("The same or similar appraisal methods and techniques shall be used in appraising the same or similar kinds of property. However, each property shall be appraised based upon the individual characteristics that affect the property's market value.").

22. Tex. Const. art. VIII, § 1(a).

23. *Compare* Tex. Tax Code § 1.04(2), with *id.* § 25.02(a).

24. As a fee-simple interest is clearly "an estate or interest … in property," *id.* § 1.04(2)(F), this last category necessarily overlaps to some degree with all the former ones.

25. 827 S.W.2d at 816.

26. *Id.* at 813.

property should escape taxation entirely because it was unclear which of the Code's appellations should apply. Indeed, such an interpretation would raise difficult constitutional questions.[27]

■ We agree with Coastal that the statutory categories are important, and that appraisal districts generally should not abandon them in favor of creative alternatives. But the Code primarily requires that property "be described in the appraisal records with sufficient certainty to identify it."[28] "Ordinarily a description is sufficient when the property sought to be assessed may be identified from the description given."[29] So long as the District's records gave Coastal notice of what property was included in each tax account (and thus some assurance that it was not included twice), including these caverns under an incorrect category would not exempt them from taxation.

Second, we disagree that the only category applicable to these caverns is "land." The Property Tax Code defines "improvement" to include "a building, structure, fixture, or fence erected on or affixed to land."[30] While the undisturbed limestone involved in *Gifford–Hill* could not be char-

acterized as an "improvement," the caverns here can.

Generally, a "structure" is "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together."[31] Salt-dome storage caverns may exist naturally,[32] but the ones here were clearly man-made. There was evidence that more than $1 million was spent to leach salt from them, creating storage space for about 6 million barrels of liquid hydrocarbons. Though the parties disputed whether these costs should be attributed to salt extraction or cavern creation (as the one accomplishes the other), the annual rent of almost $500,000 shows that the resulting "structure" had substantial value.

In the valuation case that we reversed for lack of capacity, the First Court of Appeals held that a storage cavern could not be an "improvement" because the Natural Resources Code defines a "salt dome storage facility" as both the formation itself and buildings and equipment used to operate it.[33] In the first place, this imports a definition from a different statute adopted for different purposes. But even if that were appropriate, by defining the

**27.** Tex. Const. art. VIII, § 1(a) ("Taxation shall be equal and uniform."); *id.* § 1(b) ("All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution ... shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.").

**28.** Tex. Tax Code § 25.03(a).

**29.** *Electra Indep. Sch. Dist. v. W.T. Waggoner Estate,* 140 Tex. 483, 168 S.W.2d 645, 650 (1943).

**30.** Tex. Tax Code § 1.04(3)(A).

**31.** *See* Black's Law Dictionary 1464 (8th ed.2004).

**32.** Amicus Chambers County Appraisal District discloses in its brief that it taxes man-made storage caverns as "improvements" but does not tax natural ones. As only the former are before us, we express no opinion as to the latter.

**33.** *Harris County Appraisal Dist. v. Coastal Liquids Transp., L.P.,* 7 S.W.3d 183, 190 (Tex. App.-Houston [1st Dist.] 1999), *rev'd,* 46 S.W.3d 880 (Tex.2001); *see* Tex. Nat. Res. Code § 211.001(4) (" 'Salt dome storage facility' includes any new or existing salt formation or bedded salt formation storage cavern and any equipment, facility, or building used or intended for use in the storage of a hazardous liquid in the salt formation cavern.").

facility to include both the cavern and associated fixtures (Coastal concedes the latter may be taxed as an "improvement"[34]), the implication is that both should be treated the same. At least for purposes of the Property Tax Code, the caverns here could be categorized as improvements.

 Finally, we disagree with the proposition that cases asserting double taxation should be determined by presumption rather than proof. In an appeal from an appraisal board determination, "[t]he district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally."[35] While the appraisal district "has the burden of establishing the value of the property by a preponderance of the evidence,"[36] nothing in the trial of civil suits generally suggests that we should ignore evidence about what property was or was not included.[37]

\* \* \*

Unquestionably, a huge storage facility constructed aboveground to hold millions of barrels of hydrocarbons would be taxable as an "improvement." We find no logical reason to assess such facilities differently when it is more practical to build them below.

Accordingly, we reverse the court of appeals' judgment that the caverns here could not be separately appraised. We

remand to the court of appeals to consider Coastal's remaining issues.[38]

34. See Coastal Liquids Transp., 7 S.W.3d at 190 n. 8.

35. Tex. Tax Code § 42.23(a).

36. Id. § 41.43(a).

37. See, e.g., El Paso Cent. Appraisal Dist. v. Montrose Partners, 754 S.W.2d 797, 799 (Tex. App.–El Paso 1988, writ denied) (holding that appraisal of improvements that mistakenly included swimming pool but excluded building was not merely incorrect valuation, and could be amended).

38. The court of appeals did not reach Coastal's complaints regarding the factual and legal sufficiency of the evidence to support the trial court's valuation, or its claim for attorney's fees.