In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-07-00436-CV

____________


PAUL M. MANN & CAROLYN S. MANN, Appellants


V.


HARRIS COUNTY APPRAISAL DISTRICT and the APPRAISAL REVIEW
BOARD OF HARRIS COUNTY APPRAISAL DISTRICT, Appellees






On Appeal from the 280th District Court 

Harris County, TexasTrial Court Cause No. 2006-51934

 




MEMORANDUM OPINION


 In this ad valorem property tax case, appellants, Paul M. and Carolyn S.
Mann (collectively, "the Manns"), appeal from a summary judgment rendered in
favor of appellees, Harris County Appraisal District ("HCAD") and the Appraisal
Review Board of Harris County Appraisal District ("the Board") (collectively, "the
taxing authorities"), on the Manns' claims that the subject property was unequally
and excessively appraised. In their sole issue, the Manns contend that the trial
court erred in granting summary judgment in favor of the taxing authorities. We
affirm.

BACKGROUND

 The Manns own a 13,107 square foot single family residence located at 1907
River Oaks Boulevard in Harris County, Texas. For tax year 2006, HCAD
appraised the property at a value of $4,551,268 and assessed ad valorem taxes on
the property based on that value. The Manns filed a protest of that valuation with
the Board, and their designated agent, Clarence Cooper, acted as their
representative at the protest hearing. Ed Wolff represented HCAD's chief
appraiser at the protest hearing. The following sworn testimony was given at the
hearing by the parties' representatives:

 [Board Member]: Please tell us why you think the market value ought
to be $4,154,700.


 [Manns' Representative]: Thank you very much.


 If we look at this property from a market value standpoint, we
have had (inaudible) sales transaction that took place in this particular
market place. Review Sales No. 1, No. 3 and - - No. 1, 2, and 3. Sale
No. 1 is about 40 - - 14,800 square feet, similar to the size of the
subject; sold for $152.80 a square foot. Sale No. 2 sold for $59.60 a
square foot, and Sale No. 3 sold for $148.83 a square foot. We did
exclude Sale No. 2 because it does not appear to be the same as what
the market is doing. (Inaudible) consider $150 a square foot for the
subject's property using those two sales, No. 1 and No. 3; and that
gives you our opinion of value, 4,154,700.


 [Board Member]: Okay. Any questions of the property owner's agent,
panel members?


 [Board Member]: No, sir.


 [Board Member]: No, sir.


 [Board Member]: Hearing that, Mr. Wolff, would you give us the
district's presentation and recommendation, please?


 [HCAD's representative]: (Inaudible) property analysis see if the
property has been unequally appraised. This analysis was at the time
homes from the neighborhood, all - - neighborhood or nearby
neighborhoods that are comparable and similar to the subject, made
suggestions for any differences and its price per square foot at median
at this time is three hundred fifty ninety two. The subject at three
forty-seven forty-two, which means this property has not been
unequally appraised. Comparable sales analysis did not go up in the
homes for the property unless they were real similar to this property. 

 

 I did look at - - the one sale that was similar in size was No. 1
that sold for 4,250,000. However, this - - this property is about 30
years older than the subject. The subject was built in 1971 and - - it
was built in 1971. The subject was built in 1940 and (inaudible) made
adjustments of 30 years' depreciation (inaudible) built. So they both
have remodels, but still this home is much older than the subject. 
Since there's not one other sale - - comparable sale sold in the
neighborhood or in nearby (inaudible) neighborhoods, it's the
district's opinion there is not enough evidence to support an increase
in the property. So it's the district's opinion the value should be
lowered to three hundred and nine - - three hundred - - 3,900,000 and
that the property does not - - do not feel like the property is unequally
appraised.


 [Board Member]: Questions of the district panel members.


 [Board Member]: I'm trying to understand what Mr. Wolff said.


 [Board Member]: Was it - - is that your value, three - -


 [Board Member]: Three million nine - - 


 [Board Member]: Three million nine hundred?


 [HCAD's representative]: Actually, I take that back. I'm sorry. I will
- - I will agree with the - - with the - - with - - with - - 


 [Manns' Representative]: Agent.


 [Board Member]: The agent?


 [HCAD's representative]: - - the agent. 4,154,700.


 [Manns' Representative]: (inaudible)


 [Board Member]: Any questions of the district panel members?


 [Board Member]: No


 [Board Member]: No, sir.


 [Board Member]: Okay, Back to you two gentlemen. Any final
comments?


 [Manns' Representative]: Unconditional.


 [Board Member]: We concur.


 [Board Member]: Concur.


 [Board Member]: Concur.


 [Board Member]: The panel has reached its decision in reference to
account ending in last four digits 0008 property (inaudible). The
owner's opinion of value for the property by their agent is $4,154,700. 
(Inaudible) district appropriate consideration for an increase
(inaudible). 


 It's this panel's determination that this property has not been
unequally appraised. However, it is somewhat overappraised; and
we've set the 2006 market value for this property at $4,154,700. 


 This concludes this hearing.


 After the hearing, the Board issued an Order Determining Protest setting the
appraised value of the property at $4,154,700 for tax year 2006. A copy of this
order was delivered to the Manns, and the Manns subsequently filed suit in district
court to appeal the Board's decision. The taxing authorities answered the suit and
filed a motion for summary judgment, arguing that there was an agreement as to
the appraised value of the property, and that, under the tax code, such an agreement
is final with no right to appeal. In response, the Manns denied the existence of any
agreement to an appraised value. The trial court granted the taxing authorities'
motion for summary judgment, and dismissed the Manns' claims. This appeal
followed.

PROPRIETY OF SUMMARY JUDGMENTStandard of Review

 Summary judgment is proper under Texas Rule of Civil Procedure 166a(c)
only when the movant establishes that there is no genuine issue of material fact,
and that the movant is entitled to judgment as a matter of law. Randall's Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Long v. State Farm Fire
& Cas. Co., 828 S.W.2d 125, 126-27 (Tex. App.--Houston [1st Dist.] 1992, writ
denied). In reviewing the granting of summary judgment, we assume all evidence
favorable to the nonmovant is true. Walker v. Harris, 924 S.W.2d 375, 377 (Tex.
1996). We indulge every reasonable inference and resolve any reasonable doubt in
the nonmovant's favor. Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911
(Tex. 1997).

 A defendant is entitled to summary judgment based on an affirmative
defense by proving all elements of the affirmative defense as a matter of law, such
that there is no genuine issue of material fact. Cathey v. Booth, 900 S.W.2d 339,
341 (Tex. 1995); Randall's, 891 S.W.2d at 644. Once the defendant produces
evidence entitling him to summary judgment, the plaintiff must present evidence
raising a fact issue. Walker, 924 S.W.2d at 377; Haight v. Savoy Apartments, 814
S.W.2d 849, 851 (Tex. App.--Houston [1st Dist.] 1991, writ denied).

Law and Analysis

 The taxing authorities moved for summary judgment, arguing that, as a
matter of law, the Manns are precluded from appealing to the trial court because an
agreement as to appraised value was reached between HCAD (through its agent)
and the Manns (through their agent). 

 Section 1.111(e) of the tax code provides as follows:

 (e) An agreement between a property owner or the owner's agent and
the chief appraiser is final if the agreement relates to a matter:


 (1) which may be protested to the appraisal review board or on
which a protest has been filed but not determined by the
board[.]


Tex. Tax Code Ann. § 1.111(e) (Vernon 2001) (emphasis added). 


 The Manns argue that section 1.111(e) does not apply because (1) no
"agreement" existed, and (2) even if an agreement did exist, the protest was
determined by the Board. The Manns also claim that, since section 1.111(e) does
not apply, they are entitled to an absolute right to appeal under Section 42.21(a) of
the Tax Code, and the denial of an appeal violates their due process rights. Thus,
we must determine if (1) there was an "agreement" under section 1.111(e); (2) if
there was an agreement, whether the matter was determined by the Board so that
does (e)(1) apply; and (3) if the Manns' due process rights were violated.

 Was there an "agreement"?

 Because the Tax Code does not define the term "agreement," we use the
ordinary meaning of the term. See Sondock v Harris County Appraisal District,
231 S.W.3d 65, 69 (Tex. App.--Houston [14th Dist.] 2007, no pet.) (citing Tex.
Gov't Code Ann. § 312.002). The American Heritage Dictionary defines an
"agreement" as "the act of agreeing"; harmony of opinion; accord." The
American Heritage Dictionary of the English Language (4th ed. 2006). 
When the property owners and the appraisal district share the same opinion as to
the value of the property, an agreement exists. See Sondock, 231 S.W.3d at 69. 

 The facts in Sondock are almost identical to the facts in this case. In that
case, the Sondocks' property had an assessed value of $919,556. At the protest
hearing, the Sondocks argued to the Board that their property should have been
valued at $880,500. Id. at 67. HCAD's representative responded that the assessed
value should be lowered to $880,000. Id. When the Board asked if there was any
rebuttal, the property owners answered no. Id. at 68. The Board then announced
that the value of the property would be the value given by the property owners. Id. 
The Sondocks appealed, arguing that they had not reached an agreement with
HCAD because they had not "announced" such an agreement. Id. at 69. The court
of appeals disagreed, holding that such an "announcement" was not required by the
Tax Code, and that the agreement was reached when HCAD "concurred" with the
Sondocks' valuation. Id.

 In Hartman v. Harris County Appraisal District, 2007 WL 2963686 (Tex.
App.--Houston [1st Dist.] October 11, 2007, pet. filed), the landowner presented
testimony at the protest hearing that the value of the property was 1.34 million
dollars. Id. at *1. HCAD's representative agreed that 1.34 million dollars was an
appropriate valuation, and the Board set the valuation accordingly. Id. at *2. The
landowner argued on appeal that there was no agreement because the parties
"merely recommended the same value." Id. at *3. This Court disagreed, holding
that "when the [landowners'] agent and the appraiser each announced the same
opinion as to the value of the propery, they were in 'the act or fact of agreeing' and
were expressing a 'harmony of opinion'." Id. at *4.

 In this case, both sides gave their valuations of the property. At the protest
hearing, the Manns valued their property at $4,154,700, which was lower than the
initial value of $4,551,268 given by the HCAD before the hearing. HCAD then
stated an evaluation of $3,900,000, which was lower than the Manns' valuation. 
When the Board asked HCAD to confirm the value of $3,900,000, HCAD's
representative stated that he agreed with the Manns' value of $4,151,700. The
Board asked both parties if there were any final comments. HCAD's agent gave no
answer, and the Manns' agent replied, "unconditional." Subsequently, all the
board members concurred, the panel reached the decision that property value
would be $4,151,700, and the Board issued an "Order Determining Protest" setting
the appraised value of the property at $4,154,700 for tax year 2006.

 The Manns argue that no "agreement" existed because neither party
informed the appraisal review board panel that an agreement had been reached. 
The property owners in Sondock and Hartman also argued this point--that there
was no agreement because the parties did not announce the agreement to the court. 
See Hartman, 2007 WL 2963686 at *3-4; Sondock, 231 S.W.3d at 69. However,
both this Court and the 14th Court of Appeals have held that Section 1.111(e) does
not require parties to formally announce an agreement before an agreement can be
made. Hartman, 2007 WL 2963686 at *4; Sondock, 231 S.W.3d at 69. Based on a
"harmony of opinion" between the property owners and HCAD as to the appraised
value, the courts found that there was an agreement between the parties. Hartman,
2007 WL 2963686 at *4; Sondock, 231 S.W.3d at 69. 

 Similarly, the undisputed evidence shows that Manns reached an agreement
with HCAD in this case. When the District changed its position and agreed with
the property owners' value of $4,154,700, the property owners' agent made no
objection. Furthermore, when the Board asked for any final comments from the
parties, the property owners' agent replied, "unconditional." There is no
controverting evidence in the record to raise a fact issue to whether there was a
"meeting of the minds" as to the appraised value of the property.

 Therefore, we hold that there was uncontroverted summary judgment
evidence showing that the Manns and HCAD agreed as to the value of the property
at the protest hearing.

 Was the protest "determined by the Board?"

 Section 1.111(e)(1) of the tax code states that an agreement between the
parties must relate to a matter "which may be protested to the appraisal review
board or on which a protest has been filed but not determined by the board." Id.
(Emphasis added). According to the Manns, there was a determination by the
board. Specifically, the Manns point to the "Order Determining Protest," which
states that "the board with a quorum present determined that the property appraisal
is incorrect and unequal and the value should be changed accordingly." (Emphasis
added). 

 However, this Court and the Fourteenth Court of Appeals have held to the
contrary. See Hartman v. Harris County Appraisal Dist., 2007 WL 2963686 (Tex.
App.--Houston [1st Dist. October 11, 2007, pet. filed); BPAC Texas, LP as the
Property Owners and the Property Owners v. Harris County Appraisal Dist. and
the Harris County Appraisal Review Board, 2004 WL 2422033 (Tex.
App.--Houston [1st Dist.] 2004, no pet.) (memorandum opinion); Sondock, 231
S.W.3d at 65. The BPAC case is also factually similar to this case.

 In Hartman, Sondock and BPAC, the courts found that the parties came to an
agreement, but, despite the fact that the Board subsequently entered an "Order
Determining Protest, no determination was made by the Board. Hartman, 2007
WL 2963686 at *4; BPAC, 2004 WL 2422033 at *3; Sondock, 231 S.W.3d at 69
(stating that there was no determination by Board because Board was in process of
hearing matter when agreement was reached). Pursuant to section 1.111(e), an
agreement is final regardless of whether it is later approved or adopted by the
Board. Hartman, 2007 WL 2963686 at *4; BPAC, 2004 WL 2422033 at *3;
Sondock, 231 S.W.3d at 69.

 The Manns, relying on Matagorda County Appraisal District v. Coastal
Liquids Partners, L.P., 165 S.W.3d 329, 331-32 (Tex. 2005), also argue that, by
entering an order on the protest assessing the appraised value of the property, the
Board impliedly rejected the appraisal district's claim that there had been an
agreement reached by the taxpayer and the chief appraiser. In Matagorda County
Appraisal District, one of the jurisdictional issues raised was whether an agreement
reached between a property owner precluded a protest by the owner's lessee. See
Matagorda County Appraisal Dist., 165 S.W.3d at 331. The supreme court,
however, did not reach jurisdictional issue because it found that the property being
protested by the lessee was not included in the agreement between the property
owner and the appraisal district. Id. at 332. In so holding, the supreme court stated
as follows:

 While a board has no authority to change a settlement reached by a
taxpayer and the chief appraiser, it certainly has the authority to take
note of what property was included [in the agreement]. By entering
an order assessing the appraised value of the two caverns here in
Coastal's proceeding, the board impliedly rejected the District's claim
[that the property was included in the landowner's settlement.]


Matagorda Co Appraisal Dist., 165 S.W.3d at 331-32. Matagorda County
Appraisal District does not stand for the general proposition that, by entering an
"Order Determining Protest," a board impliedly rejects the appraisal district's
claim that an agreement has been reached. The holding in Matagorda County
Appraisal District is simply that the board, by entering an "Order Determining
Protest," can decide that the property at issue in the present protest was not the
subject of an earlier agreement in a different protest.

 Following the holdings of Hartman, Sondock and BPAC, we conclude that
the protest was not "determined by the Board," even though, after the parties
reached an agreement, the Board entered an "Order Determining Protest" that set
the appraised value at the amount agreed to by the parties.

 Was there a Due Process violation?

 Appellants also argue that the district court's finding of an agreement denies
them their due process rights. This Court considered, and rejected, the same
argument in Hartman and BPAC. See Hartman, 2007 WL 2963686 at *5; BPAC,
2004 WL 2422033 at *3. The Fourteenth Court of Appeals has held likewise. See
Sondock, 231 S.W.3d at 70.

 It is well-established that the collection of taxes constitutes deprivation of
property; therefore, a taxing authority must afford a property owner due process of
law. McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, 496 U.S. 18,
36-37, 110 S. Ct. 2238, 2250-51 (1990). Texas courts have held that "[d]ue
process simply affords a right to be heard before the final assessment; it does not
detail the review mechanism." ABT Galveston Ltd. P'ship v. Galveston Cent.
Appraisal Dist., 137 S.W.3d 146, 155 Tex. App.--Houston [1st Dist.] 2004, no
pet.) (quoting Dallas County Appraisal Dist. v. Lal, 701 S.W.2d 44, 47 (Tex.
App.--Dallas 1985, writ ref'd n.r.e.)); see Hartman, 2007 WL 2963686 at * 5;
Sondock, 231 S.W.3d at 70; BPAC, 2004 WL2422033 at *3. In cases involving
taxation, due process is satisfied if a taxpayer is given an opportunity to be heard
before an assessment board at some stage of the proceedings. See Hartman, 2007
WL 2963686 at * 5; Sondock, 231 S.W.3d at 70; BPAC, 2004 WL2422033 at *3
The courts in Hartman, Sondock and BPAC each held that the property owners
were not deprived of their statutory due process rights when they were given an
opportunity to be heard before a review board and reached an agreement with the
taxing authority at that review. Hartman, 2007 WL 2963686 at *5; Sondock, 231
S.W.3d at 70; BPAC, 2004 WL 2422033 at *3. 

 In this case, the Manns filed a protest and were given an opportunity to
present arguments before the Board. HCAD agreed with the Manns' valuation of
the property, and the Manns made no objections after HCAD agreed with their
value. Even though given the opportunity, the Manns made no final comments
other than "unconditional." Therefore, we conclude that the summary judgment
record established, as a matter of law, that the Manns' due process rights were not
violated because they were given an opportunity to be heard before the board, and
that they reached an agreement with HCAD during that review.


 CONCLUSION


 Accordingly, we hold that the trial court did not err in granting summary
judgment in favor of the taxing authorities. We affirm the judgment of the trial
court.




 Sherry Radack


 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.