# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-20-00122-CV

**Travis Central Appraisal District, By and Through Marya Crigler, Acting In Her Official Capacity as Chief Appraiser of Travis Central Appraisal District, Appellant**

**v.**

**Texas Disposal Systems Landfill, Inc., Appellee**

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-006394, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment issued on February 18, 2022; substitute the following opinion and judgment in their place; and deny appellee's motion for rehearing.

Travis Central Appraisal District (TCAD) appeals the district court's judgment granting pleas to the jurisdiction filed by Texas Disposal Systems Landfill, Inc. (the Landfill) and dismissing TCAD's claims. For the following reasons, we reverse the judgment and remand to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

The relevant facts are undisputed. For tax year 2019, TCAD appraised the Landfill's property at $21.2 million, and the Landfill protested with the Travis Appraisal Review

Board (the ARB). The Landfill relied on two grounds—market value and unequal appraisal— but withdrew the market value ground the day before the ARB hearing. After the hearing, the ARB found that the appraisal was unequal and reduced the appraised value to $2.8 million.

TCAD, through its chief appraiser, appealed to the district court for a trial de novo, claiming that "the value set by the ARB" results in a "below market value and unequal appraised value." The Landfill filed a plea to the jurisdiction as to TCAD's market value claim, arguing that "TCAD lacks an order determining market value to challenge on appeal" because the ARB determined only an unequal appraisal protest. The district court granted the plea, dismissing TCAD's market value claim but leaving TCAD's unequal appraisal claim. The Landfill filed another plea to the jurisdiction on TCAD's remaining claim, arguing that TCAD improperly relied on a 2017 general resolution by its board of directors—issued two years before the ARB order—to satisfy Section 42.02(a)'s requirement to obtain written approval to appeal. *See* Tex. Tax Code § 42.02(a) (providing that chief appraiser is "entitled to appeal" "[o]n written approval of the board of directors of the appraisal district"). The district court granted the Landfill's second plea, dismissing TCAD's remaining claim and rendering a final judgment.

## II. DISCUSSION

In two issues, TCAD challenges the district court's judgment granting the Landfill's pleas to the jurisdiction, which we review de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–28 (Tex. 2004) (describing standard). First, TCAD argues that Section 42.02(a)'s written approval requirement is not jurisdictional; that regardless, the 2017 general resolution satisfies the requirement; and that even if it is not satisfied, the district court should have abated rather than dismissed the cause. Second, TCAD claims that in a

de novo appeal to the district court, TCAD is not "limited by the arguments that the property owner chooses to raise in the underlying administrative proceeding" and that therefore the district court had jurisdiction to consider its market value claim.

## A. Section 42.02(a)'s Written Approval Requirement

We first consider TCAD's challenge to the district court's order granting the Landfill's second plea to the jurisdiction. The Landfill's second plea to the jurisdiction was based on Section 42.02(a), which provides, as relevant here: "On written approval of the board of directors of the appraisal district, the chief appraiser is entitled to appeal an order of the appraisal review board determining: (1) a taxpayer protest as provided by Subchapter C, Chapter 41[.]" Tex. Tax Code § 42.02(a). TCAD argues that "Section 42.02(a) contains 'no explicit language' suggesting any legislative intent, much less a clear intent, that the written-approval requirement be jurisdictional."

### 1. Jurisdictional Prerequisite

Until 2000, Texas law was that "where a cause of action is derived from a statute," "'strict compliance with all statutory prerequisites is necessary to vest a trial court with jurisdiction.'" *Texas Mut. Ins. v. Chicas*, 593 S.W.3d 284, 286 (Tex. 2019) (quoting *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 510 (Tex. 2012)). But beginning with *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000), the focus shifted: "The classification of a matter as one of jurisdiction . . . opens the way to making judgments vulnerable to delayed attack for a variety of irregularities that perhaps better ought to be sealed in a judgment," and "the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction." *In re United Servs. Auto. Ass'n*, 307

3

S.W.3d 299, 306 (Tex. 2010) (orig. proceeding) (quoting *Dubai*, 12 S.W.3d at 76); *see also Chicas*, 593 S.W.3d at 286 ("We see no reason that this focus should also not apply to judicial appeals from administrative rulings."). Thus, "the focus post-*Dubai* is to strengthen the finality of judgments and reduce the possibility of delayed attacks." *Chicas*, 593 S.W.3d at 286.

Notwithstanding this shift in focus, the Landfill argues that Section 42.02(a)'s requirement is jurisdictional under *Appraisal Review Board v. International Church of Foursquare Gospel*, 719 S.W.2d 160, 161 (Tex. 1986) (per curiam), and that *Foursquare Gospel*'s holding was reaffirmed by *Matagorda County Appraisal District v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 n.5 (Tex. 2005), and *Cameron Appraisal District v. Rourk*, 194 S.W.3d 501, 502–03 (Tex. 2006) (per curiam). *Foursquare Gospel*'s holding, however, is narrower than the Landfill asserts and does not control here. The *Foursquare Gospel* Court concluded that a *taxpayer's* compliance with a requirement from *another statutory provision*—"to include the . . . Appraisal District as a party within 45 days after receiving notice that a final order had been entered"—was jurisdictional. 719 S.W.2d at 161. The *Foursquare Gospel* Court neither addressed the statutory requirements for a chief appraiser—rather than a taxpayer—to appeal nor considered whether the written approval requirement is jurisdictional. Twenty years later, in a footnote aside, the *Matagorda* Court broadly stated, "While we held twenty years ago that compliance with the statutory requirements for appeal from an appraisal review is jurisdictional, we have yet to address whether that holding survives *Dubai*[.]" 165 S.W.3d at 331 n.5 (citation omitted). And in an unremarkable statement regarding exhaustion of administrative remedies, the *Rourk* Court noted, "[W]e have repeatedly held that 'a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes.'" 194 S.W.3d at 502 (quoting *Matagorda*,

4

165 S.W.3d at 331). *Matagorda* and *Rourk* did not speak to Section 42.02(a)'s requirement, and to the extent that they could be construed as implying that *Foursquare Gospel*'s holding should be extended to *any* and *all* statutory requirements—including those for a chief appraiser and not just the taxpayer—for an appeal from an appraisal review board's order, those statements are non-binding obiter dicta. *See Seger v. Yorkshire Ins.*, 503 S.W.3d 388, 399 (Tex. 2016) ("Obiter dictum is not binding as precedent."). Because there is no controlling precedent as to whether Section 42.02(a)'s written approval requirement for the chief appraiser to appeal is jurisdictional, we apply the post-*Dubai* standard in considering whether the requirement is jurisdictional. *See Mosley v. Texas Health & Human Servs. Comm'n*, 593 S.W.3d 250, 261 n.3 (Tex. 2019) ("[W]e emphasize that *Dubai* and its progeny remain the standard for prospective decisions concerning whether a statutory prerequisite to maintaining a cause of action is mandatory or jurisdictional.").

We begin with the presumption that the Legislature did not intend to make Section 42.02(a)'s requirement jurisdictional; "a presumption overcome only by clear legislative intent to the contrary." *City of DeSoto v. White,* 288 S.W.3d 389, 394 (Tex. 2009); *see also Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391 (Tex. 2014) ("We resist classifying a provision as jurisdictional absent clear legislative intent to that effect."). To ascertain clear legislative intent that a statutory requirement be jurisdictional, we examine the statute's plain language and apply statutory interpretation principles, considering the specified consequences for noncompliance, the purpose of the statute, and the consequences of alternative constructions. *See Chicas*, 593 S.W.3d at 287.

Considering the plain language first, we note that the Legislature knows how to use unequivocal language to make statutory requirements jurisdictional, *see, e.g.*, Tex. Nat. Res. Code § 33.171(d) (providing that "notice requirement" "is a jurisdictional prerequisite to the

5

institution of suit"), but Section 42.02(a) lacks such unequivocal language, *see* Tex. Tax Code § 42.02(a); *Texas Mut. Ins. v. Ruttiger*, 381 S.W.3d 430, 453 (Tex. 2012) ("We presume the silence is a careful, purposeful, and deliberate choice."). The Legislature has also straightforwardly mandated that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Tex. Gov't Code § 311.034; *see Chatha*, 381 S.W.3d at 515 (noting "straightforward mandate that in suits against the government, statutory prerequisites are jurisdictional"). But because a Section 42.02(a) appeal is generally against a private property owner—e.g., the Landfill—and not against a governmental entity, the statutory requirement does not implicate the Legislature's "straightforward mandate." The Landfill argues that the phrase "is entitled to appeal" creates the very right to appeal and therefore is jurisdictional in nature. *See* Tex. Gov't Code § 311.016(4) ("'Is entitled to' creates or recognizes a right.").[1] But "[a]lthough the plain meaning might suggest a jurisdictional bar," we cannot conclude that Section 42.02(a)'s language "meet[s] the requisite level of clarity to establish the statute as jurisdictional," especially when other statutory interpretation principles are considered. *See Crosstex Energy*, 430 S.W.3d at 392 (construing requirement to file certificate of merit with complaint as nonjurisdictional); *cf. In re Department of Fam. & Protective Servs.*, 273 S.W.3d 637, 642 (Tex. 2009) (orig. proceeding) (concluding that "nothing in the language" indicates that "deadlines are jurisdictional," including such

---

[1] The Landfill cites myriad authorities from our sister courts that have considered jurisdiction over a Section 42.01(a) appeal, *see* Tex. Tax Code § 42.01(a) (stating conditions when "[a] property owner is entitled to appeal"), and argues that Section 42.02(a)'s same "entitled to appeal" language analogously should be considered jurisdictional as well. But in contrast to a Section 42.02(a) appeal, a Section 42.01 appeal is against an appraisal district—a political subdivision of the State with governmental immunity, *id.* § 6.01(c)—and therefore implicates the mandate that such statutory prerequisites be construed as jurisdictional, *see* Tex. Gov't Code § 311.032.

language as trial court "shall dismiss the suit" and "may not retain the suit on the court's docket" when deadlines expire).

Turning to the second consideration, Section 42.02 does not contain specific consequences for noncompliance. "[W]hen a statute does not require dismissal for failure to comply, this weighs in favor of a finding that it is not jurisdictional." *Chicas*, 593 S.W.3d at 289 (citing *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 495 (Tex. 2001)). The cases relying on this principle generally have been considering requirements with a specified deadline, unlike the requirement here. *See, e.g.*, *id.* at 288 (considering 45-day deadline for filing suit); *Helena Chem.*, 47 S.W.3d at 494 (considering requirement that complaint be filed within "time necessary to permit effective inspection"). But to the extent this consideration has any weight here, it weighs in favor of concluding that the requirement is nonjurisdictional.

As to the third consideration, the Legislature did not declare the statute's purpose, which generally means this "factor provides little assistance." *See Crosstex Energy*, 430 S.W.3d at 392. Both parties, however, acknowledge that the purpose is to make boards of directors "gatekeepers" to Section 42.02(a) appeals. This purpose is not necessarily frustrated by construing the requirement as nonjurisdictional. The boards may still act as "gatekeepers" when a chief appraiser's compliance is properly challenged, and the failure to comply with obtaining written approval may still result in the loss of the appeal. *See Helena Chem.*, 47 S.W.3d at 496 (noting that construing timing requirement as nonjurisdictional does not thwart purpose of providing for investigation because board can conduct investigation despite delay); *see also White*, 288 S.W.3d at 393 (noting that failure to comply with nonjurisdictional requirement may result in loss of claim); *Hines v. Hash*, 843 S.W.2d 464, 469 (Tex. 1992) (holding that failure to perform while suit is abated for that purpose may result in dismissal). Thus, to the extent the

7

third consideration has any weight here, it weighs in favor of concluding that the requirement is nonjurisdictional.

Finally, we consider the consequences of alternative interpretations. If Section 42.02(a)'s written approval requirement were jurisdictional and a chief appraiser successfully pursued an appeal to a final judgment but did not timely get approval, *see* Tex. Tax Code § 42.06(a) (requiring notice of appeal to be filed within fifteen days after receiving notice that order has been issued), or relied on approval that was later determined to be defective—as may be the case here—that judgment would be vulnerable to collateral attack in perpetuity, *cf. Crosstex Energy*, 430 S.W.3d at 392–93 (noting that if certificate of merit requirement were jurisdictional, judgment would be vulnerable to collateral attack and that "statute acts as a procedural bar for claims without a certificate of merit" but that "[i]t does not follow that because the Legislature created this procedural bar, it also wanted to create a basis for attacking the judgment in perpetuity"); *Dubai*, 12 S.W.3d at 76 ("When, as here, it is difficult to tell whether or not the parties have satisfied the requisites of a particular statute, it seems perverse to treat a judgment as perpetually void merely because the court or the parties made a good-faith mistake in interpreting the law."). On the other hand, as we have already noted, the purpose of the requirement (as described by the parties) would not be frustrated by construing the requirement as nonjurisdictional, and the Landfill has not identified any other negative consequences for such a construction. Accordingly, this last consideration weighs in favor of construing Section 42.02(a)'s requirement as nonjurisdictional.

Weighing these considerations, we conclude that Section 42.02(a)'s written approval requirement is not jurisdictional.

8

## 2. **Proper Remedy**

TCAD argues that if we conclude that Section 42.02(a)'s written approval requirement is not jurisdictional, then we must determine whether the 2017 general resolution satisfied the requirement and if it did not, what the proper remedy is for the failure to comply, citing *White*, 288 S.W.3d at 398 ("Having determined that the notice provision is not jurisdictional, we must determine the proper remedy, if any, for the City's failure to comply."). But *White* involved a different procedural posture. After receiving a suspension letter from the police department, White had the option of appealing either to the Civil Service Commission or an independent third-party hearing examiner. *Id.* at 391. White elected to appeal to an independent third-party hearing examiner but then argued that the examiner was without jurisdiction to hear his appeal because the suspension letter did not satisfy the requirement to "notify White that an appeal to a hearing examiner would limit his ability to seek further review with a district court judge." *Id.* White filed suit in district court under a statutory provision "permitting judicial review of hearing examiner decision on grounds that the examiner was without jurisdiction." *Id.* at 392 (citing Tex. Loc. Gov't Code § 143.057(j)). The district court granted summary judgment in White's favor, which the City appealed. *Id.* In that procedural posture, the Texas Supreme Court concluded that the notice requirement did not deprive the hearing examiner of jurisdiction, "determine[d] the proper remedy" for failure to comply with the nonjurisdictional statutory requirement, and remanded the case to the district court in the interest of justice "with instructions to remand to the hearing examiner, so that White has an opportunity to make an appellate election with full knowledge of his appellate rights and with knowledge of our guidance in this opinion." *Id.* at 398, 401.

In contrast, the procedural posture here is an appeal from the district court's granting of the Landfill's pleas to the jurisdiction regarding the *district court's* jurisdiction over TCAD's claims. And as an intermediate court and in contrast to the Texas Supreme Court, we are instructed to "hand down a written opinion that is as brief as practicable but that addresses every issue raised *and necessary* to final disposition of the appeal." *Compare* Tex. R. App. P. 47.1 (emphasis added), *with id.* R. 63 ("The Supreme Court will hand down a written opinion in all cases in which it renders a judgment."). Accordingly, we sustain TCAD's first issue to the extent that it asks us to reverse the district court's order granting the Landfill's second plea to the jurisdiction based on the Section 42.02(a) issue.[2]

---

[2] The Landfill also contends that because the 2017 resolution did not satisfy Section 42.02(a)'s requirement, the chief appraiser "lacked authority to file a notice of appeal" in the district court. We construe this argument as a contention that the chief appraiser lacked capacity to appeal the ARB order. *See* Tex. R. Civ. P. 93(1)–(2) (requiring verified plea to challenge when "plaintiff has not legal capacity to sue" or "plaintiff is not entitled to recover in the capacity in which he sues"); *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 779 (Tex. 2020) (holding that question whether claim brought by partner actually belongs to partnership is matter of capacity and noting that "capacity 'is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate'" (quoting *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005))). Capacity, however, generally does not implicate a court's subject matter jurisdiction and may be waived. *Pike*, 610 S.W.3d at 778–79. The defendant has the burden to challenge capacity via verified plea, and if properly challenged, "the trial court should abate the case and give the plaintiff a reasonable time to cure any defect." *Lovato*, 171 S.W.3d at 853 n.7; *cf. Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 838, 846 (Tex. 2021) (holding that invalidity of legal services contract does not invalidate bona fide attempt to invoke trial court's jurisdiction and noting that "[a] bona fide effort to invoke the trial court's jurisdiction may be defective, but it is not void, and the proceedings cannot be dismissed without affording an opportunity to refile a proper instrument, if necessary"). To the extent that the district court granted the Landfill's second plea to the jurisdiction and dismissed the cause on the ground that the chief appraiser lacked capacity to appeal the ARB order, we conclude that it erred.

## B. Market Value Claim

In its second issue on appeal, TCAD challenges the district court's dismissal of its market value claim. TCAD initially found the market value of the Landfill's property to be $21,714,939 and appraised the property at $21,230,464 after certain deductions. Because the Landfill withdrew its market value protest, the ARB did not determine market value; instead, the ARB determined that "[t]he subject property was unequally appraised, and the appraisal records should be adjusted to reflect a value of $2,800,000." The chief appraiser then appealed the ARB order determining the Landfill's protest. In such an appeal, "[r]eview is by trial de novo," and "[t]he district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." Tex. Tax Code § 42.23(a); *see also Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018) ("A trial de novo is '[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance.'" (quoting *Trial De Novo*, Black's Law Dictionary (10th ed. 2014))).

As its market value claim, TCAD asserted that "[t]he market value of [the Landfill's] property is greater than the determination of the ARB" and that "[t]he result of the ARB's determination is an appraisal of the subject property below market value[.]" But we do not reach those merit issues. The question before us today is more limited: Does the district court have jurisdiction over TCAD's market value claim? We conclude that it does.

The Landfill raises two arguments for why jurisdiction does not exist over TCAD's market value claim. First, the Landfill argues that the ARB did not determine market value, and therefore an appeal from "an order of the appraisal review board determining . . . a taxpayer protest" does not encompass a market value claim if the ARB did not determine market

11

value. But TCAD's market value claim is not challenging the ARB's market value determination; TCAD is challenging the ARB's appraisal value determination on the ground that it is below market value.[3] TCAD may or may not be successful on the merits, but the statutory language providing for an appeal from "an order of the appraisal review board determining . . . a taxpayer protest" does not preclude such a challenge. *See* Tex. Tax Code § 42.02(a).

Second, the Landfill argues that "TCAD's de novo theory is at odds with the exclusive-remedies scheme established by the Property Tax Code" and that "[p]ermitting a district court to resolve new protest grounds would denigrate the administrative hearing process and the exclusive-remedies scheme established by the Property Tax Code." But the statutory scheme provides that on appeal the district court may "fix the appraised value of property in accordance with the requirements of law if the appraised value is at issue." *Id.* § 42.24(1); *see also Cherokee Water Co. v. Gregg Cnty. Appraisal Dist.*, 801 S.W.2d 872, 877 (Tex. 1990) ("Given the appeal of the district's appraisal is by trial de novo, the trial court clearly has power to determine market value whether it be higher or lower than the value determined by the appraisal district."). The Landfill quotes our holding that "a trial de novo does not provide the plaintiff with the right to introduce new claims that were not raised and considered by the ARB." *Z Bar A Ranch, LP v. Tax Appraisal Dist. of Bell Cnty.*, No. 03-18-00517-CV, 2020 WL 1932908, at *6 (Tex. App.—Austin Apr. 22, 2020, no pet.) (mem. op.). But *Z Bar* concerned whether the plaintiff taxpayer had exhausted administrative remedies prior to appealing the appraisal review board's order. *Id.* at *6–8. Here, in contrast, TCAD—not the protesting taxpayer—is appealing the ARB order. As our sister court has noted:

---

[3] We do not address whether TCAD was required to raise the issue before the ARB to preserve it; here, the Landfill concedes that it "has not raised waiver and the district court did not rely on waiver in dismissing the market-value claim."

Unlike the property owner, the appraisal district had no prior administrative remedy to exhaust at the ARB stage of the proceedings. As the entity responsible for the initial property valuation, the appraisal district had no right to initiate the protest procedure and no control over what objections would be presented by the property owner to the ARB. Regardless of what issues were presented by the property owner, the appraisal district had no grievance until the ARB altered its determination of the property's market value and appraised value. The statutory procedure for the appraisal district to complain about the ARB's ruling began with its right of "appeal" to the district court for a trial de novo. Thus, because the appraisal district contended that the ARB erred by reducing the property's market value and appraised value, and it followed the statutory procedures for initiating an appeal, it had standing to challenge the ARB's order in accordance with its statutory right to do so. There was no prior administrative procedure available to the appraisal district that it failed to exhaust.

*Harris Cnty. Appraisal Dist. v. Houston 8th Wonder Prop., L.P.*, 395 S.W.3d 245, 251 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Although the appraisal district in *Houston 8th Wonder* contested the appraisal review board's alteration of *both* the market value and appraised value, here the ARB determined that "the subject property was unequally appraised" and that "the appraisal records should be adjusted to reflect a value of $2,800,000." Nevertheless, in its de novo trial before the district court, TCAD is contesting the ARB's determination of the appraisal value as below market value (along with its other claim that the ARB's determination is an unequal appraisal); TCAD had no complaint until after the ARB had made its determination and adjusted the appraisal value, and "[t]here was no prior administrative procedure available to the appraisal district that it failed to exhaust." *Id.*

Accordingly, we conclude that the district court erred in granting the Landfill's plea to the jurisdiction and dismissing TCAD's claim that the ARB's determination of the appraisal value is below market value.

13

### III.  THE LANDFILL'S REHEARING MOTION

In a motion for rehearing, the Landfill argues that "the Court's conclusion here that [TCAD] can challenge the Section 42.26(a)(3) unequal-appraisal value on the basis that it does not represent the property's market value" "conflicts with these deliberate rejections of market value's relevance to an equal-and-uniform value," citing *In re Catherine Tower, LLC*, 553 S.W.3d 679, 686 (Tex. App.—Austin 2018, orig. proceeding), *Weingarten Realty Investors v. Harris County Appraisal District*, 93 S.W.3d 280, 287 (Tex. App.—Houston [14th Dist.] 2002, no pet.), and *Harris County Appraisal District v. United Investors Realty Trust*, 47 S.W.3d 648, 653 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  We also have received myriad amicus briefs supporting rehearing and raising three primary concerns:  (1) that the opinion collapses the distinction between an unequal appraisal claim and a market value claim, (2) that the opinion will lead to discovery on market value as relevant to a taxpayer's unequal appraisal protest, and (3) that the opinion will chill taxpayer protests if a central appraisal district could raise a market value claim on appeal as taxpayers may forgo an unequal appraisal protest to avoid possible discovery on appeal related to the property's market value.

These concerns and the cited cases, however, do not address the procedural posture of this appeal:  our inquiry at this stage concerns the district court's jurisdiction over TCAD's market value claim, not the merits of the claim or the relevance of discovery.

As we have mentioned above, the "Scope of Review" is "trial de novo," and "[t]he district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally."  Tex. Tax Code § 42.23(a).  "A party who appeals as provided by this chapter must file a petition for review," but the statutory provision requiring a party to file a petition for review does not limit the issues of fact and law that may be raised.  *Id.*

14

§ 42.21(a). The chapter provides that "the chief appraiser is entitled to appeal an order of the appraisal review board determining: (1) a taxpayer protest," *id.* § 42.02(a), but it is the ARB's order that is being appealed, not merely the ARB's protest determination, *see, e.g.*, *id.* § 42.06(a) (setting forth notice of appeal requirements "[t]o exercise the party's right to appeal an order of an appraisal review board"). The statutory scheme requires that the ARB "shall determine the protest and make its decision by written order." *Id.* § 41.47(a). But the ARB, "by its order," also "shall correct the appraisal records by changing the appraised value placed on the protesting property owner's property" and "must state in the order the appraised value of the property . . . as finally determined by the board." *Id.* § 41.47(b)–(c).

Here, TCAD is appealing this "order . . . determining . . . a taxpayer protest" for review by "trial de novo,"[4] challenging the changed appraised value as stated in the ARB order.[5] *See id.* §§ 41.47(b)–(c), 42.02(a), .23(a). In its market value claim, TCAD raises the ground that the order lists an appraised value below market value, notwithstanding that the ARB order based the adjusted appraised value on an unequal appraisal ground, and requests in its petition that

---

[4] "A 'trial de novo' is a new and independent action in the reviewing court with 'all the attributes of an original action' as if no trial of any kind has occurred in the court below." *Interest of A.L.M.-F.*, 593 S.W.3d 271, 277 (Tex. 2019) (quoting *Key W. Life Ins. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961)). The Landfill cites *Rice v. Pinney* for the proposition that "courts have recognized jurisdictional limits in a trial de novo proceeding," but that case relied on express statutory and rule provisions denying jurisdiction to a statutory county court to adjudicate title to land notwithstanding the grant of general jurisdiction for a de novo trial following an appeal of a forcible detainer suit from justice court. 51 S.W.3d 705, 708–09 (Tex. App.—Dallas 2001, no pet.) (citing Tex. Gov't Code § 27.031(b); Tex. R. Civ. P. 746).

[5] TCAD's petition states, "The market value of [the Landfill's] property is greater than the determination of the ARB and the value set by the ARB results in unequal appraisal of the subject property. The ARB's value determination was arbitrary, erroneous, unjust, and unlawful and violated the requirements of Tex. Tax Code §§ 1.04(7) and 23.01. The result of the ARB's determination is an appraisal of the subject property below market value and unequal appraised value."

"judgment be entered fixing the 2019 appraised value of the [Landfill's] property at no less than its market value, in accordance with the requirements of law and as authorized by [Section] 42.24(1)," which provides that "[i]n determining an appeal, the district court may: (1) fix the appraised value of property in accordance with the requirements of law if the appraised value is at issue." *See id.* § 42.24(1). Thus, TCAD is "rais[ing] by [its] pleading" an "issue[] of fact and law" that the stated appraised value in the ARB order is below market value, and the statutory language does not preclude the district court from exercising its jurisdiction to try this issue raised by TCAD's pleadings. *See id.* § 42.23(a).

TCAD characterizes the Landfill's rehearing argument as "that a district court has no *jurisdiction* over a market value claim in a trial de novo of an appraisal set by an [ARB] on unequal appraisal grounds, because the latter claim has been held to prevail over the former when the two values conflict." TCAD notes, however, that "[w]hich claim prevails in a conflict goes to the merits." Our opinion does not address the legal merits of TCAD's market value claim, nor does it speak to whether a market value claim would prevail over an appraisal value determination based on unequal appraisal. To the extent that the Landfill believes that TCAD's market value claim is legally baseless or fails as a matter of law, procedural mechanisms provide for the disposal of the claim on such grounds and are available at early stages of the litigation, including before discovery is taken. *See id.* ("The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally."); *see also, e.g.*, Tex. R. Civ. P. 91a (providing for dismissal of cause of action that has no basis in law), 166a(c) (providing for summary judgment if "moving party is entitled to judgment as a matter of law"). But whether a claim is legally baseless or fails as a matter of law invokes a different inquiry than that presented in an appeal from an order granting a plea to the jurisdiction. *See, e.g.*, *Reaves v.*

16

*City of Corpus Christi*, 518 S.W.3d 594, 605 (Tex. App.—Corpus Christi–Edinburg 2017, no pet.) ("We also note that whereas rule 91a was designed to allow for the dismissal of baseless claims, the purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims asserted have merit.").

## IV. CONCLUSION

For these reasons, we reverse the district court's judgment and remand for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Reversed and Remanded on Motion for Rehearing

Filed:   June 22, 2022