

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00080-CV

OBRA J. MOORE, III, INDIO MINERALS LLC, GUNNER OIL SERIES LLC, AND
MADAKET ENERGY LLC, COBALT NATURAL RESOURCES LLC, AND MAGNOLIA
NATURAL RESOURCES LLC, Appellants

V.

1789 MINERALS FUND I, LP, ROCKCLIFF ENERGY OPERATING LLC, CADDO
MINERALS INC., AND REGINA ROBERTS, Appellees

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 23-0425

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

This case focuses on an ambiguity created by a Sheriff's Deed following a tax foreclosure on certain mineral and royalty interests situated in Harrison County. As a result of the ambiguity, Rockcliff Energy Operating LLC filed a petition in interpleader which sought clarity regarding the ownership of royalty interests it was required to pay as a result of its operations by a declaratory judgment. Obra J. Moore, III, Indio Minerals LLC, Gunner Oil Series LLC, and Madaket Energy LLC (collectively, Appellants)[1] filed cross-claims and a motion for summary judgment, arguing that the Sheriff's Deed conveyed only wellbore interests. They now appeal the trial court's judgment in favor of 1789 Minerals Fund I, LP, Caddo Minerals Inc., and Regina Roberts (collectively, Appellees), which found, among other things, that a statute of limitations in the Texas Tax Code barred Appellants' claims seeking construction of the Sheriff's Deed.

We find that, on this record, Section 16.069 of the Texas Rules of Civil Procedure authorized the filing of Appellants' counterclaims and cross-claims and that there are genuine issues of material fact regarding the construction of the Sheriff's Deed. *See* TEX. R. CIV. P. § 16.069. For this reason, and because Appellants and 1789 Minerals Fund I, LP, who acquired its interest from Caddo Minerals, Inc., have filed a joint motion to partially set aside the judgment, we reverse the trial court's judgment and remand the matter to the trial court for full consideration of the merits in light of this opinion and the settlement agreement.

---

[1]Although Cobalt Natural Resources LLC and Magnolia Natural Resources LLC were originally named as parties to this lawsuit, claims against them were nonsuited, and their interests were sold to Gunner and Madaket.

## I. Factual and Procedural Background

### A. The Seven Tracts at Issue

In the 1930s, brothers O.J. Moore, O.R. Moore, and Howard Moore inherited an undivided interest in five tracts of land located in Harrison County, including (1) a 24.6-acre tract (Tract 1),[2] (2) a 21-acre tract (Tract 2),[3] (3) a 1-acre tract (Tract 3),[4] (4) a 62-acre tract (Tract 4),[5] and a 50-acre tract (Tract 5).[6] In 1939, they partitioned the surface estate of the five

---

[2]This tract's description is recorded in Volume 142, page 9, of the Deed Records of Harrison County.

[3]This tract is described by Volume 106, page 27 of the Deed Records of Harrison County.

[4]This tract is described by Volume 75, page 513 of the Deed Records of Harrison County.

[5]The 62-acre tract is "situated in the Southeast part of Harrison County, Texas, on [sic] the Mary Richardson Headright Survey, and [is] described as follows":

> BEGINNING at the Northwest corner of said 62 acre tract, being the Southwest corner of Gary McClure's 40 acre tract; THENCE East 63 2/3 rods; THENCE South 156 rods; THENCE West 63 2/3 rods; THENCE North 156 rods, to the place of beginning, being the same land deeded to Larkin M. Moore by J.D. Rudd, by Warranty Deed dated November 23rd, 1903, and recorded in Volume 52, at pages 511 to 512, of the Deed Records of Harrison County, Texas.

[6]The 50-acre tract is "located in the James Shandoin Headright Survey," A-622, "in the Southeastern part of Harrison County," and is described as:

> BEGINNING on the East Boundary Line of the James Shandoin Survey at a point that is 166 varas South of the Southwest corner of the Stith Fields Survey, A-261, a pine known for corner from which a red oak bears North 8 9/10 varas marked SJV;
>
> THENCE South along the East line of the James Shandoin Survey 683 varas to an iron pin for corner;
>
> THENCE West 415 ½ varas along the North Line of the Edward Johnson 200 acre tract to a stake for corner from which a red oak bears North 39 East 8 6/10 varas marked X;
>
> THENCE North 683 varas along the East line of the George Moore 50 acre tract and the West line of the tract described herein to a stake in a field on the South Boundary Line of 125 acres owned by the heirs of Richard Moore, Deceased, same being the Northeast corner of the George Moore 50 acre tract;
>
> THENCE East 415 ½ along the South line of the Gus Oliver 25 acres (Now R.J. Whelan) and North line of the tract described herein to the point of beginning, containing 50 acres, more or less.

tracts by deed recorded in Volume 236, page 409 of the Deed Records of Harrison County (Partition Deed). The terms of the Partition Deed established that the Moore brothers were "desirous of making partition of the same, SAVE AND EXCEPT the oil and gas rights, and oil and gas royalties, and other mineral and/or minerals [sic] rights thereunder, or that may be produced, saved, and marketed therefrom." That language had the effect of severing the surface estate from the mineral estate. Pursuant to the terms of the Partition Deed, O.J. acquired the surface estate of Tracts 1, 2, and 3, O.R. acquired the surface estate of Tract 4, and Howard acquired the surface estate of Tract 5. Because the ownership of the mineral estate was unaffected, the Moore brothers each retained their undivided one-third interest in the mineral estates for each of the five tracts.

Aside from their inheritance, O.J. and Howard jointly owned a 37.5-acre tract of land that they had partitioned in 1933. As a result of that partition, O.J. acquired an 18.75-acre tract (Tract 6),[7] and Howard acquired a tract of equal size (Tract 7).[8]

---

[7]O.J.'s portion was described as "13.75 acres of the G.P. Harrison and 5 acres of the J.H. Harrison Surveys" and contained the following metes and bounds description:

> Beginning at the S W Corner of Block No. 1 of this subdivision. Thence South 292.5 varas to the S W Corner of the 37½ acre tract. Thence East 360 varas to the S E Corner of said 37 ½ acre tract. Thence North 292.5 varas to the S E Corner of Block No 1 of this subdivision. Thence West 360 caras to the place of beginning.

[8]Howard's portion was described as "13.75 acres of the G.P. Harrison survey and 5 acres of the J.H. Harrison survey" and contained the following metes and bounds description:

> Beginning at the N E Corner of a 24.6 acre tract owned by Jno M. Turner. Thence South 292.5 varas to a stake at the N W Corner of Block No 2 of this subdivision. Thence East 360 varas to the N E Corner of said Block No 2. Thence North 292.5 varas to the N E Corner of the N E Corner of the 37½ acre tract. Thence West 360 varas to the place of beginning.

4

**B.     The Moore Brothers' Leases and Inheritances**

In 1945, O.R. and O.J. executed an oil, gas, and mineral lease of their undivided interest in Tract 4 in favor of H.T. Manning, reserving their royalty interest. That lease was recorded in Volume 294, page 151 of the Deed Records of Harrison County. That lease was pooled into the Bert Fields Minnie Bell Gas Unit (Minnie Bell) and the M.R. Tiller Oil Unit #1.

In 1950, O.R. and O.J. executed an oil, gas, and mineral lease of their undivided interests in Tracts 1, 2, and 3 to Bert Fields, reserving their royalty interest. That lease was recorded in Volume 349, page 238 of the Deed Records of Harrison County, and Tract 1 was pooled into the A.G. Birdwell Gas Unit. Also in 1950, O.J. executed an oil, gas, and mineral lease of his undivided interest in Tract 5 to Fields and his full mineral interest in Tract 6, save his royalty interest, and the lease was recorded in Volume 349, page 240 of the Deed Records of Harrison County. Tract 6 was also pooled into the A.G. Birdwell Gas Unit.

O.J. died in 1964, and all of his real property, including the undivided one-third mineral interests in Tracts 1-5 and his full mineral interest in Tract 6, subject to the leases described above, passed to his son, Obra J. Moore, Jr. (Jr.). Jr. died intestate in 1968, and his real property interests passed to his two sons, Obra J. Moore, III (Obra) and Darryl Keith Moore. *See* TEX. EST. CODE ANN. § 201.001(b). That left Obra and Darryl each a 1/6 mineral interest in Tracts 1-5 and a 1/2 mineral interest in Tract 6.

Howard died intestate in 1969. Because he was unmarried and never had children, half of his one-third undivided mineral interests in Tracts 1-5 and half of his mineral interest in Tract 7 passed to O.R., with the remaining interests passed to Obra and Darryl. *See* TEX. EST. CODE

5

ANN. § 201.001(e). That left O.R. with a 1/2 mineral interest in Tracts 1-5 (O.R.'s original 1/3 interest plus Howard's inherited 1/6 interest) and a 1/2 mineral interest in Tract 7. Obra and Darryl's mineral interests in Tracts 1-5 increased to 1/4 each (their inherited 1/6 interest from Jr. and their 1/12 interest from Howard); they already each had a 1/2 mineral interest in Tract 6, and they each inherited a 1/4 mineral interest in Tract 7.

In 1987, Obra and Darryl each leased their oil, gas, and minerals in Tract 5 to Debbie Pickett, reserving their royalty interests, and the leases were recorded in Volume 1149, pages 593 and 596 of the Deed Records of Harrison County. Those leases were pooled into the J. Johnson A-1 Unit, and the pooling declaration was filed in Volume 1158, page 691 of the Deed Records of Harrison County.

In 2004, Darryl died single and intestate, and half of his estate passed to his mother, Tommie Gray, while the other half passed to Obra. *See* TEX. EST. CODE ANN. § 201.001(d).

In 2014, the Harrison Central Appraisal District (HCAD) sued Obra for failure to pay property taxes on his real property and royalty interests.[9] Although Gray owned undivided interests in the Tracts, she was not included in HCAD's lawsuit.

With respect to the interests at stake here, HCAD's petition alleged delinquencies in accounts (1) N010520816, described as "BELL, MINNIE #3, SAMSON LONE STAR, LLC, BETHANY, 705, RRC" and appraised at $400.00; (2) N010360077, described as "BIRDWELL AG #5" and appraised at $540.00; and (3) N010084566, described as "RI JOHNSON 'A' #4" and

---

[9]HCAD's petition also listed Jr. and Darryl, who were deceased, as defendants but did not list Gray.

6

appraised at $270.00, with each containing 0.000 acres.[10] The alleged tax deficiency for account N010520816 for tax years 2010-2015 was $119.22, the alleged deficiency for account N010360077 for tax years 2007-2015 was $198.94, and the alleged deficiency for account N010084566 for tax years 2005-2013 was $50.21. In the space for listing the "Deed Reference," for the interests at stake, HCAD stated in its petition that they were "assessed on the tax rolls under the account number(s) listed above." The petition listed other interests, including Obra's interests in some of the Tracts and royalty interests in other pooled units, some of which contained descriptions referencing well numbers. The petition, which also listed other royalty interests in the Birdwell and Bell Minnie units identified by separate account numbers, alleged delinquencies on a total of thirty-seven properties.

As a result of the lawsuit, HCAD obtained a judgment for delinquent taxes on only eight properties, including accounts N010520816, N010360077, and N010084566, and the trial court dismissed HCAD's claims on the remaining accounts. The trial court's judgment contained authorization to foreclose on the eight properties, and it issued an order of sale for these interests.[11] After a foreclosure sale, a Sheriff's Deed conveyed the following interests to Regina Roberts on August 1, 2017, in exchange for $4,500.00:

> **PROPERTY:** 0.000904000 BELL, MINNIE #3, SAMSON LONE STAR, LLC, BETHANY, 705, RRC 249383 **ACRES:0.000** Tax Account No. NO10520816

---

[10]The appraised value of the interest in properties containing an acreage description were much higher. As an example, a one-acre property interest was appraised at $4,660.00, a five-acre property interest was appraised at $10,340.00, and a twenty-acre property interest was appraised at $25,200.00.

[11]The order of sale and bill of costs shows that the tax delinquency for tax year 2016 for the three accounts was under seven dollars. The total collected for the sale of the eight properties was $62,600.00, of which $30,896.30 in excess proceeds were returned to Obra.

0.0027890 BIRDWELL AG #5, SHELBY OPERATING COMPA, WASKOM, WORNICK J A-733, 5.4 MLS S WASKOM **ACRES:0.000** Tax Account No. NO10360077

0.0022430 RI JOHNSON 'A' #4, EXCO OPERATING COMPANY, WASKOM, J SHANDOIN **ACRES:0.000** Tax Account No. N010084566

(Emphasis added). According to the Appellants, the Sheriff's Deed only conveyed a royalty interest in three wells.

In 2019, Roberts conveyed her interests acquired by the Sheriff's Deed to Caddo Minerals Inc. Instead of using the description contained in the Sheriff's Deed, Roberts's deed to Caddo stated that it conveyed the following:

> All that certain tract or parcel of Land out of the James Shandoin Survey, A-622, containing 50 acres, more or less, and being the same tract of land described in that certain Oil, Gas and Mineral Lease between Obra J. Moore, III, as Lessor, and Debbie Pickett, as Lessee, dated April 7, 1987, and recorded in Volume 1149, Page 596, Deed Records of Harrison County, Texas;
>
> Including but not limited to 0.4486% (0.004486) of 8/8ths royalty interest as to all depths within the surface boundaries of the Jeanne Fields Shelby, Et Al Agency - J. Johnson A-1 Unit, being 621.18 acres, more or less, more specifically described in that certain Pooling Declaration, dated October 1, 1987, recorded in Volume 1158, Page 691, of the Deed Records of Harrison County, Texas, together with any amendments and revisions thereto[.]

In other words, Roberts purported to convey Tract 5 and all of the mineral interests in the Johnson A-1 Unit. Caddo conveyed all of its interest in Tract 5 and the Johnson A-1 Unit to 1789. Caddo later conveyed its fifty percent interest in the Minnie Bell Gas Unit to 1789.

In 2012, Gray died intestate and Obra inherited her estate, as shown by a 2022 affidavit of heirship.

8

In 2022, Obra sold his remaining mineral interests in Tracts 1-7, "LESS AND EXCEPT the following Wellbore-Only interests," to Indio described as follows:

1)      those certain WELLBORE-ONLY INTERESTS described as quoted below in that certain Sheriff's Deed dated August 1, 2017, by and between Obra J. Moore, Jr.; Obra Moore, III; and Darryl K. Moore, as Grantor, and Regina Roberts, as Grantee, and recorded as instrument 2017-000007993 in the Official Public Records of Harrison County, Texas, STRICTLTY LIMITED to the .00090400, .0027890, and .0022430 wellbore-only decimal interests appearing in the quoted descriptions below:

> l.      API No. 36537345 with surface location 780 feet scaled from the West line and 497 feet from the North line of the John Womack Survey A-705, Harrison and Panola Counties, Texas, also located 754 feet from an East line and 547 feet from a South line of the 675.44 acre unit:
>> "0.00090400 BELL, MINNIE #3, SAMSON LONE STAR, LLC, BETHANY, 705, RRC 249383 ACRES 0.000 Tax Account No. N010520816"
>
> 2.      API No. 20334514 with surface location 4440 feet (sc) from the North line and 3950 (sc) feet from the East line of the Jacob Wornick Survey, A - 733, Harrison County, Texas:
>> "0.0027890 SHELBY OPERATING COMPA, WASKOM, WORNICK J A-733, 5.4 MLS S WASKOM ACRES 0.000 Tax Account No. N01360077"
>
> 3.      API No. 20332865 with surface location 467 feet from the easternmost east line and 4846 feet from the easternmost south line of the James Shandoin Survey A-622, Harrison County, Texas, and also being 467 feet from the east line and 1820 feet from the northernmost north line of the 621.18 acre Johnson "A-1" Unit:
>> "0.0022430 RI JOHNSON 'A' #4, EXCO OPERATING COMPANY, WASKIM [sic], J SHANDOIN ACRES: 0.000 Tax Account No. N010084566."

Later in 2022, Indio conveyed that same interest to Gunner and Madaket.

9

## C. The Present Lawsuit

After acquiring these interests, Gunner and Madaket contacted Rockcliff, who operated the wells, to acquire division orders and were informed by Rockcliff that Roberts and Caddo claimed title to all of the interests in Tracts 1-7.

Alleging an ambiguity in the Sheriff's Deed, Rockcliff filed a petition in interpleader and sought a declaratory judgment to set out the rights and responsibilities of the parties seeking the same royalty proceeds. Rockcliff's petition informed the trial court that "there [wa]s a question whether [the Sheriff's Deed] [wa]s broad enough to cover the tax defendants' entire mineral interest in [Tract 4,] the 62-acre tract and [Tract 5], the 50-acre tract described . . . or whether the description [wa]s limited to the wells named in the descriptions of the three properties specifically listed in the Sheriff's Deed."

Appellants filed cross-claims against Appellees. They argued that the Sheriff's Deed only conveyed a wellbore interest to Roberts, who had no other mineral rights. As a result, Appellants sought a declaratory judgment regarding the scope of conveyance by the Sheriff's Deed, sought to quiet title to the remaining interests, and filed an unjust enrichment claim for any royalties or bonuses collected by Roberts that were not conveyed by the Sheriff's Deed.

Appellees responded to the cross-claims by raising an affirmative defense asserting that any cross-claim seeking to void the Sheriff's Deed was barred by a one-year statute of limitations under Section 33.54 of the Texas Tax Code, which states that "an action relating to the title to property may not be maintained against the purchaser of the property at a tax sale

10

unless the action is commenced . . . before the first anniversary of the date that the deed executed to the purchaser at the tax sale is filed of record." TEX. TAX CODE ANN. § 33.54(a)(1).

Appellants filed a traditional motion for partial summary judgment on their claims and attached deeds and probate records tracing their claims of ownership and the documents regarding the tax foreclosure suit. They argued that "Roberts acquired the right to receive a 0.00090400 royalty from minerals produced from the Minnie Bell #3 well; the right to receive a 0.0027890 royalty from minerals produced from the Birdwell AG #5, and the right to a 0.0022430 royalty from minerals produced from the Johnson A #4 well." Appellants also filed an affidavit of Robert Wallace, a partner of Indio and manager of Gunner. Wallace's affidavit attached documents from HCAD's website showing that "Harrison County assesses property taxes on royalty interest and that each royalty interest in a specific oil-and-gas well has its own property tax account number, property description, and assessment value." The HCAD website documents showed that there were several property identification numbers associated with other wells on property described as "BELL, MINNIE #3," and "JOHNSON 'A' #4 . . . J SHANDOIN," and that, as of December 2022, the HCAD still listed either Darryl or Gray as the owners of that property.

1789 filed its own motion for partial summary judgment, arguing that the statute of limitations barred Appellants' cross-claims. 1789 also argued that the Sheriff's Deed conveyed all interest which Obra "in the TAX FORECLOSURE LAWSUIT had on the date said Judgment was rendered . . . in and to the PROPERTY." Because Obra owned interests in Tracts 4 and 5, 1789 claimed that while the Sheriff's Deed to Roberts "identified th[o]se royalty interests by

11

listing the 3 economically producing wells in the unit," HCAD had foreclosed on the entire royalty interests Obra owned in Tracts 4 and 5. Roberts and Caddo joined 1789's motion for partial summary judgment and adopted its arguments. An affidavit from Garrett Ashmore, co-founder and chief executive officer of 1789, averred that Rockcliff had "paid 1789 royalties on all minerals produced from the Johnson A unit—not just from the minerals produced from the Johnson A #4 well, of which there [wa]s no longer production." Even so, the royalty payments from Rockcliff listed that the payment was for "Abney Wells," and a HCAD tax summary showed that the assessments were for the following legal descriptions: "2092.150, ABNEY RK B HV #1H" and "2987.300, MOSLEY HV UNIT B#2H," "2348.740, MOSELEY HV UNIT C #3H" and "1283.940, MOSELEY HV UNIT D #4H," all operated by Rockcliff.

Appellants responded by arguing that the statute of limitations in Section 33.54 did not apply because the lawsuit was not about property conveyed by the Sheriff's Deed but was about property that was not conveyed therein. Moreover, they argued that the statute of limitations was not a bar to their cross-claims because of Section 16.069(a) of the Texas Civil Practice and Remedies Code, which reads,

> If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069(a). They argued that Appellees sought "interests in each producing well across the 68 net royalty acres . . . [,] includ[ing] interests in wells not in existence at the time of the Sheriff's sale, and which were therefore not being taxed at the time of

the foreclosure suit." Appellants compared the language of the Sheriff's Deed to the language in Roberts's Deed, which they characterized as "breathtakingly broader than the Sheriff's Deed."

Wallace filed another affidavit, attaching the Harrison County Tax Office's (Tax Office) statements for the tax year 2022, which showed that it assessed taxes against Obra, who was listed as the owner for wells in the Birdwell AG #5 and Johnson "A" #4 after judgment in the foreclosure suit. He also attached a 2022 tax statement showing that Obra was listed and taxed as the owner of the Bell Minnie GU #3H, which contained a large amount of acreage and bore the same "RRC" number 249383 that was listed in the Sheriff's Deed description, which listed the acreage conveyed to Roberts as 0.000. The Tax Office also sent a statement in 2022 to Darryl for his interests in the Johnson "A" #4, Birdwell AG #5, and Tiller Units, and another to Gray for her interests in the Bell Minnie #3. Yet another tax statement showed that the Tax Office listed the legal description for account N010360077 as "BIRDWELL AG #5, HOPEWELL OPERATING, AB 733 J WORNICK SUR, WELL #5 RRC #267451" and, for account N010084566, as "JOHNSON "A" #4, INDIGO RESOURCES LLC, AB 622 J SHANDOIN SUR, WELL #4 RRC #199031," suggesting that the foreclosures for those account numbers were for wells.

The trial court denied Appellants' motion for partial summary judgment and granted Appellees' motion. Appellees moved for entry of final judgment.

Appellants filed a response for entry of final judgment, arguing that the Minnie Bell should not be included in the final judgment because,

> only Gunner/Madaket and Cobalt/Magnolia had competing claims to title to the Minnie Bell Unit. The parties fully resolved this dispute as to title, and this

13

> [c]ourt granted dismissal as to these claims on February 12, 2024. Cobalt and Magnolia quitclaimed any interest they may have had in the lands underlying the Minnie Bell Unit to Gunner and Madaket.

Appellants also noted that the 27.11-acre tract formerly known as the Tiller Unit was not mentioned in the Sheriff's Deed, but title to the tract was at issue "in th[at] lawsuit because Rockcliff interpleaded funds related to a well that traverse[d]" the Johnson A Unit and paid "Roberts royalties produced from the well from the Tiller tract," which Roberts, Gunner, and Madaket claimed title to. Appellants argued that, at a minimum, the descriptions of the interests should "be revised to exclude the Johnson, Birdwell, and Tiller properties that were in the tax foreclosure [petition] but [were] dismissed" by the judgment in that case, "such as the Johnson A #2." Appellants noted that Rockcliff had paid them royalties on those properties. According to Appellants, Appellees agreed that Rockcliff correctly paid those royalties in their proposed Final Judgment and did not contest the Appellants' interests in those properties. Thus, Appellants argued that "these properties should not be included in the title declarations." They also argued that because the tax judgment dismissed foreclosure claims against Darryl and Gray, th[o]se interests should not be awarded to Appellees.

By a separate order, the trial court granted Rockcliff's petition in intervention and awarded its attorney fees.

Gary Rogers, who had purchased the following three tracts of property and obtained a sheriff's deed for the property in exchange for $34,100.00 at the foreclosure (Rogers Deed), filed a plea in intervention:

> 24.6 Acres, more or less, out of Abstract 328 of the G P Harrison Survey and Abstract 329 of the J H Harrison Survey, Harrison County, Texas (First tract set

14

aside to O J Moore in Volume 236, Page 409 Harrison County, Texas) Tax Account No. R000023105/R000023106

5.00 Acres, more or less, out of Abstract 329 of the J H Harrison Survey, Harrison County, Texas (Block 2 set aside to O J Moore in Volume 194, Page 623 Harrison County, Texas) Tax Account No. R000023107

13.750 Acres, more or less, out of Abstract 328 of the G P Harrison Survey, Harrison County, Texas (Block 2 set aside to O J Moore in Volume 194, Page 623 Harrison County, Texas) Tax Account No. R000023l04.

Rogers argued that the

assignment to Regina Roberts was, in fact, of wellbore only interests and that the remainder of the untaxed and unsevered oil, gas and mineral rights passed with the surface to Mr. Rogers. Accordingly, Intervenor Gary Rogers has a justiciable interest in whether the interest conveyed to Regina Roberts was wellbore only.

Rockcliff and 1789 moved to set aside Rogers's plea in intervention. In response Rogers argued,

1789 argues that the Regina Roberts Sheriff's Deed unambiguously conveyed Moore's entire mineral interest. However, there is at least a genuine issue of material fact as to whether the Gary Rogers Sheriff's Deed, in fact, conveyed at least a portion and perhaps all of Moore's mineral interest in the A.G. Birdwell Unit to Gary Rogers.

Rogers provided HCAD with documents showing that he had been paying taxes on accounts that covered the same interest in the AG Birdwell Unit that Roberts, Caddo, and 1789 argued had been conveyed to Roberts by the Sheriff's Deed. Rogers attached an email from Hopewell Operating, Inc., stating,

The way the Attorney for Harrison County (McCreary) explained it to me was that "only the property tax identification number" was being assigned. Under this interpretation, Mr. Rogers received the land and minerals (no reservation of minerals) and Ms. Roberts received only the *royalty interest* under the *Birdwell #5* – and that at such time as that well is plugged and abandoned, the interest will be gone and Mr. Rogers will be full-owner of the surface and minerals.

15

1789 entered into a Rule 11 agreement[12] with Rogers. In accordance with its prior rulings and the Rule 11 agreement, the trial court entered a final judgment, which included, among other things, a take nothing judgment against Appellants and attorney fees for Rockcliff and Appellees. The trial court also declared, "[T]hat no party commenced an action relating to the title of the Property, transferred pursuant to the Sheriff's Deed, before the first anniversary of the date that the deed executed to the purchaser at the tax sale was filed of record on August 1, 2017, as required by Texas Tax Code § 33.54(a)(1)." Consequently, the trial court also declared that the Sheriff's Deed

> conveyed to Regina Roberts, the grantee identified therein, all right, title, and interest of Obra J. Moore, Jr., Obra Moore, III, and Darryl K. Moore, the defendants identified therein, in and to:
>
> a. The so-called Johnson A-1 Unit, described as that certain 50 mineral acres, more or less, in the James Shandoin Survey, A-622, Harrison County, Texas, and being the same tract of land described in that certain Oil, Gas, and Mineral Lease between Obra J. Moore, III, as Lessor, and Debbie Pickett, as Lessee, dated April 7, 1987, recorded in Volume 1149, Page 596 of the Official Public Records of Harrison County, Texas—including all right, title, and interest of Obra J. Moore, Jr., Obra Moore, III, and Darryl K. Moore in and to all depths within the surface boundaries of the Jeanne Fields Shelby, Et Al Agency – J. Johnson A-1 Unit, being 621.18 acres, more or less, more specifically described in that certain Pooling Declaration, dated October 1, 1987, recorded in Volume 1158, Page 691 of the Official Public Records of Harrison County, Texas, and as subsequently amended.
>
> b. The so-called Minnie Bell Gas Unit as defined in that certain Instrument Identifying and Describing a Gas Unit, executed on October 16, 1950, recorded in Volume 366, Page 500 of the Official Public Records of Harrison County, Texas and Volume

---

[12]See TEX. R. CIV. P. 11.

16

303, Page 244, of the Official Public Records of Panola County, Texas, and as subsequently amended.

c.    27.11 acres, more or less, described as being the West 27.11 acres of a 62-acre tract of land out of the Mary Richardson Survey, A-605, Harrison County, Texas. Said 62-acre tract of land being the same land set aside to O. R. Moore in Partition Deed dated September 28, 1939, and recorded in Volume 236, Page 409, of the Deed Records of Harrison County, Texas. Also being the First Tract described in an Oil, Gas and Mineral Lease dated September 11, 1946, from J. D. Furrh, et al, as Lessor, to Bert Fields, as Lessee, recorded in Volume 305, Page 623, of the Deed Records of Harrison County, Texas.

The judgment also recited that Rogers, pursuant to the Rule 11 agreement, withdrew his plea in intervention.

In a motion to set aside the judgment and a motion for new trial, Appellants attached discovery responses from Mary Elizabeth Vaughn, a shareholder of the firm representing HCAD during the foreclosure suit, which stated that the interests acquired by Roberts were mineral interests, not real property interests, and clarified that no acres of land were foreclosed on.

### D.    Post-Appeal Motions and Requests

After appealing the trial court's judgment, Appellants and 1789 filed a joint motion asking that this Court to

> partially set aside the trial court's Final Judgment as it pertains to claims between 1789 and Appellants regarding title to mineral interests in the Johnson A Unit (described below) and remand the case to the trial court for rendition of an amended judgment in accordance with the parties' agreement. Appellants and 1789 agree that:
>
> 1.    Appellants and 1789 have reached and executed a final settlement of the dispute between them, and no other party to this appeal.

17

2.     There is no longer a justiciable controversy between Appellants and 1789.

3.     Appellants and 1789 will pay their own costs, if any, related to this appeal.

4.     The trial court's determination of claims in favor of Regina Roberts and Caddo Minerals, Inc. concerning interests in the Birdwell and M.R. Tiller Oil #1 Units is not a part of this settlement and will remain on appeal.

Even Caddo and Roberts seek additional answers "to the extent this Court determines that Appellants' claims are not time-barred and that the [S]heriff's [D]eed did not unambiguously convey the disputed interests to Roberts," as shown by the following portion of their brief:

> First, to the extent that the Court determines the statute of limitations does not bar Indio's claims, this Court should remand to the district court for consideration of Caddo and Roberts's laches defense. Indio did not move for summary judgment on that defense, and that defense must be adjudicated by the district court on remand before reaching a determination on Indio's claims for cloud on title and unjust enrichment. Second, to the extent that the Court determines the sheriff's deed did not unambiguously convey the Interests to Roberts, this Court should remand to the district court to construe the sheriff's deed because there are genuine disputes of material fact as to the proper interpretation of the scope of that deed if the [S]heriff's [D]eed did not unambiguously convey the Interests to Roberts.

## II.    Standard of Review

"An appellate court reviews de novo the grant or denial of a motion for summary judgment." *Hunt Cnty. Appraisal Dist. v. Lake Tawakoni Wind Point Park Corp.*, No. 06-24-00016-CV, 2024 WL 4585608, at *2 (Tex. App.—Texarkana Oct. 28, 2024, pet. denied) (mem. op.) (citing *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). "The party moving for traditional summary judgment bears the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law." *Id.*

18

(quoting *State Farm Mut. Auto. Ins. Co. v. Rumbaugh*, 642 S.W.3d 901, 903 (Tex. App.—Texarkana 2022, pet. denied) (quoting *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 700 (Tex. App.—Texarkana 2018, pet. denied))). "Where, as here, both parties file motions for summary judgment and the trial court grants one and overrules the other, we consider both sides' summary judgment evidence and determine all questions presented . . . ." *Id.* (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)).

## III.     Section 16.069 Authorized the Filing of Appellants' Cross-Claims

In their motion for partial summary judgment, the Appellees argued that Appellants' "claims are barred outright by the applicable statute of limitations because they seek to 'quiet title' to property already conveyed by the Sheriff's Deed." Appellees cited to Section 33.54, which creates a one-year statute of limitations for "an action relating to the title to property . . . against the purchaser of the property at a tax sale." TEX. TAX CODE ANN. § 33.54(a)(1). In their response, Appellants argued that limitations do not apply here because they filed their cross-claims within thirty days of answering Rockcliff's interpleader action, thus reviving the claims under Section 16.069. Even so, the trial court granted Appellees' partial motion for summary judgment. In its final judgment, the trial court incorporated the order granting Appellees' partial summary judgment and further declared "that no party commenced an action relating to the title of the Property, transferred pursuant to the Sheriff's Deed, before the first anniversary of . . . that . . . deed . . . as required by Texas Tax Code [Section] 33.54(a)(1)."

19

## A. Standard of Review

"Whether the statute of limitations is applicable to a given factual situation is a question of law rather than a question of fact, unless there is a factual dispute as to when the injury occurred or should have been discovered." *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 397 (Tex. App.—Texarkana 1999, pet. denied). "Where, as here, the facts are undisputed, we review de novo the question of whether Section 16.069 applies to permit a party's otherwise time-barred counterclaim." *Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 73 (Tex. App.—Eastland 2019, pet. denied) (citing *Chorman v. McCormick*, 172 S.W.3d 22, 24 n.3 (Tex. App.—Amarillo 2005, no pet.); *Doyer v. Pitney Bowes, Inc.*, 80 S.W.3d 215, 218 (Tex. App.—Austin 2002, pet. denied); *Musgrave*, 990 S.W.2d at 398).

## B. Analysis

Section 16.069 provides

> (a)   If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

> (b)   The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

Tex. Civ. Prac. & Rem. Code Ann. § 16.069(a)–(b).

Here, it is undisputed that Appellants timely filed their cross-claims within the time limits prescribed by Section 16.069(b). Rockcliff filed its petition in interpleader on April 26, 2023. Appellants filed their answer on May 22, 2023, and their cross-claims were filed within thirty

days of their answer. In their cross-claims, Appellants noted that their claims were filed pursuant to Section 16.069.

Appellees do not challenge whether the Appellants' cross-claims arise out of the same transaction or occurrence. Rather, Appellees argue that allowing Section 16.069 to apply in this case would "allow litigants to circumvent the statutes of limitations on time-barred claims anytime that an interpleader action is initiated—even though such claims would be barred by the statute of limitations if they were filed in a stand-alone action."

The facts here are distinguishable from *Ball v. SBC Communications, Inc.*, the sole case relied on by the Appellees to prevent the use of Section 16.069 by the Appellants. *See Ball v. SBC Commc'ns, Inc.*, No. 04-02-00702-CV, 2003 WL 21467219, at *6 (Tex. App.—San Antonio June 25, 2003, pet. denied). *Ball* involved a declaratory judgment for the express purpose of obtaining a finding that limitations applies. That is not so here. *Ball* was not an interpleader action, and it involved a different statute of limitations. Here, a well operator, Rockcliff, filed an interpleader petition. The Appellants responded to that petition with a cross-claim asking for a ruling that would limit what was conveyed by the Sheriff's Deed to Roberts (and thus increase what was obtained by Moore and those aligned with Moore).[13] Neither Rockcliff nor the Appellants sought a declaratory judgment regarding the applicability of limitations. The Appellees raised limitations in response to an effort to fend off the attack on their original deed (the Sheriff's Deed) by the Appellants. Only then did the Appellants raise Section 16.069. The

---

[13]Indeed, the Moore parties, being the parties associated with the original landowner, asserted that the Sheriff's Deed was void for lack of an adequate property description. We examine the merits of that question in following section of this opinion.

21

Appellees sought a declaration that the Sheriff's Deed conveyed all interests held by Moore at the time of the deed. In doing so, the Appellees looked beyond the face of the Sheriff's Deed itself.

The result is that *all* parties sought relief from the trial court regarding the Sheriff's Deed. All parties asked the trial court to construe the language of the Sheriff's Deed to determine what that deed did or did not convey. Were that not enough to distinguish the present situation from *Ball*, the circumstances here involve requests for relief in addition to the interpled funds. *See Ramsland v. WFW Fam., LP*, No.05-17-00326-CV, 2018 WL 1790080, at *5 (Tex. App.—Dallas Apr. 16, 2018, pet. denied) (mem. op.) (quoting *Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 545 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)) ("Courts have interpreted [S]ection 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than just a declaration on a dispute between the parties.")). Appellants seek the recovery of, among other things, royalties and bonuses already paid to Appellees, and Appellees seek interest on the interpled funds and attorney fees.[14] Altogether then, the present circumstances are different from the circumstances that precluded the application of Section 16.069 in *Ball*.

Therefore, assuming without deciding that Section 33.54 applies, on this record we find that Section 16.069 authorized the filing of Appellants' cross-claims. As a result, the trial court erred when it applied the statute of limitations and prevented Appellants from pursuing their

---

[14]"A claim for attorney's fees is a claim for affirmative relief." *Ramsland*, 2018 WL 1790080, at *7 (quoting *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 514 (Tex. App.—Dallas 1989, writ denied)); *see, e.g., Town of Flower Mound v. Upper Trinity Reg'l Water Dist.*, 178 S.W.3d 841, 844 (Tex. App.—Fort Worth 2005, no pet.); *Falls Cnty. v. Perkins & Cullum*, 798 S.W.2d 868, 871 (Tex. App.—Fort Worth 1990, no writ); *ECC Parkway*, 765 S.W.2d at 513–14.

claims related to the title of the property transferred pursuant to the Sheriff's Deed.

## IV.     Genuine Issues of Material Fact Remain and the Parties Seek Remand

"The Texas Tax Code defines '[r]eal property' as including 'a mineral in place[,]' and 'an estate or interest' in a mineral in place." *Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 364 (Tex. App.—El Paso 2021, pets. denied) (alterations in original) (quoting TEX. TAX CODE ANN. § 1.04(2); *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 332 (Tex. 2005)). "The Supreme Court of Texas has further explained that a single tract of real property may include several aspects of realty; thus, some aspects of the real property can be taxed separately even though all aspects of it are part of the same surface tract." *Id.* (citing *Coastal Liquids*, 165 S.W.3d at 332, 334). "[A] royalty right is taxable as a real property interest." *Id.* (citing *Sheffield v. Hogg*, 77 S.W.2d 1021, 1024 (Tex 1934)).

"Like any other conveyance of property, a judgment for foreclosure of a tax lien upon real estate which fails to [sufficiently] describe [property] . . . is void." *AIC Mgmt. v. Crews*, 246 S.W.3d 640, 645 (Tex. 2008) (citing *Arnold v. Crockett Indep. Sch. Dist.*, 404 S.W.2d 27, 28 (Tex. 1966)). For this reason, "[a] tax judgment's property description must be sufficiently particular to allow a party to locate the specific land being identified." *Id.* Because there is no "heightened standard [that] applies when gauging the sufficiency of property descriptions contained in constables' or sheriffs' deeds made by virtue of execution sale," a conveyance of real property "must contain a sufficient description of the property to be conveyed." *Id.*

Even so, "Texas law does not require courts to scrutinize the proceedings of a judicial sale with a view to defeat them; instead, 'every reasonable intendment will be made in their

23

favor, so as to secure, if it can be done consistent with legal rules, the object they were intended to accomplish.'" *Id.* (quoting *Hermann v. Likens*, 39 S.W. 284 (Tex. 1897)). "A property description is sufficient if the writing furnishes within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty." *Id.*

Here, each of the three interests acquired by Roberts was identified by a HCAD account number. Because the Sheriff's Deed referenced means or data by which the interests could be identified with reasonable certainty, "[a]lthough . . . not a model of clarity, we cannot conclude based on the record presented that [it is] void as a matter of law." *Id.*

However, where the description of an interest, like the one here, cannot be conclusively determined, summary judgment is improper. *See id.* at 641. Appellants argue that the Sheriff's Deed conveyed royalty interests in wells, not the entirety of all mineral interests owned by Obra at the time of the foreclosure suit. Their interpretation is supported not only by HCAD's documents and statements, but by the description of the property in the Sheriff's Deed, which specified that no interest in any acreage was conveyed to Roberts. As a result, Appellees did not establish their right to summary judgment as a matter of law.

As in *AIC Management*, the Sheriff's Deed here described the interest conveyed by tax account numbers used by HCAD "to divide property for tax purposes." *See id.* at 645. Additionally, the first interest conveyed referenced an "RRC" number, which is an identification number issued by the Texas Railroad Commission to an operator seeking to drill or produce on a particular interest. *See* 16 TEX. ADMIN. CODE §§ 3.102 (R.R. Comm'n of Tex., Tax Reduction

24

for Incremental Prod.), 3.4 (R.R. Comm'n of Tex., Oil & Geothermal Lease Nos. & Gas Well ID Nos. Required on All Forms), 12.121 (R.R. Comm'n of Tex., Identification of Other Licenses & Permits). RRC numbers can be issued for each gas well. 16 TEX. ADMIN. CODE § 3.4.

As in *AIC Management*, we have found that Appellees have not established the right to summary judgment given genuine issues of material fact related to the property descriptions in the Sheriff's Deed, but we also cannot say that the property descriptions in the Sheriff's Deed were inadequate to convey title as a matter of law. *See AIC Mgmt.*, 246 S.W.3d at 647, 649.

## V.    Conclusion

Under the facts of this case, and in accordance with (1) Appellants' and 1789's joint request for remand and (2) Caddo's and Roberts's conditional request for remand, we reverse the trial court's judgment and remand the case to the trial court for further proceedings.


Scott E. Stevens
Chief Justice

Date Submitted:    July 2, 2025
Date Decided:    February 17, 2026

25